THE DEPARTMENT OF CENTRAL MANAGEMENT SERVICES,
Petitioner, v. ILLINOIS STATE LABOR RELATIONS BOARD *et al.*,
Respondents.

Fourth District    No. 4—95—0221

Argued January 23, 1996.—Opinion filed February 23, 1996.—Rehearing
denied April 2, 1996.

Neil P. Stern (argued), Joseph M. Gagliardo, and Stefanie W. Kohen, all of Laner, Muchin, Dombrow, Becker, Levin & Tominberg, of Chicago, and Nancy S. Pittman, of Central Management Services, of Springfield, for petitioner.

Richard Tupper (argued), of Cornfield & Feldman, of Chicago, for respondent American Federation of State, County, & Municipal Employees, Council 31, AFL-CIO.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Barbara E. Pitts (argued), Assistant Attorney General, of counsel), for respondent Illinois State Labor Relations Board.

JUSTICE McCULLOUGH delivered the opinion of the court:

Petitioner State of Illinois, Department of Central Management Services, brings this direct statutory review of an administrative de-

cision of the Illinois State Labor Relations Board (Board) granting the representation petition of respondent American Federation of State, County, and Municipal Employees, Council 31, AFL-CIO (AFSCME), regarding corrections leisure activities specialist IV (CLAS IVs) and certifying AFSCME as the exclusive bargaining representative of the CLAS IVs. (5 ILCS 315/9(i) (West 1994); 735 ILCS 5/3—113 (West 1994); 155 Ill. 2d R. 335.) The Board accepted the recommendation of the administrative law judge (ALJ) and adopted it as the Board's decision. On December 30, 1994, the Board ordered that an election be conducted to allow the employees to vote on representation. (*State of Illinois (Department of Central Management Services—Department of Corrections)*, 11 Pub. Employee Rep. (Ill.) par. 2011, No. S—RC—94—064 (Illinois State Labor Relations Board, December 30, 1994).) Following the election, the Board certified the election of AFSCME as the exclusive representative of the CLAS IVs and included those employees in the historical RC—62—OCB bargaining unit.

On appeal, the issues are whether (1) as a matter of law, the CLAS IVs are "State supervisors" exempt from the "preponderance" test included in section 3(r) of the Illinois Public Labor Relations Act (Act) (5 ILCS 315/3(r) (West 1994)); (2) the Board's finding that the CLAS IVs are not supervisors was against the manifest weight of the evidence; and (3) the Board's finding that the CLAS IVs were not managerial employees was against the manifest weight of the evidence. We reverse and remand with directions.

The parties and this court are familiar with the record in this case. Only those facts necessary to an understanding of this disposition will be discussed.

This action involves 18 employees of the Department of Corrections (DOC). Adult institutions are headed by a warden. At each adult facility, there are an assistant warden of programs and an assistant warden of operations, both of whom report directly to the warden. The assistant warden of programs oversees several departments, including the leisure time services (LTS) department. The equivalent position in a juvenile facility is assistant superintendent of programs. The LTS departments are generally headed by a CLAS IV who reports directly to the assistant warden of programs. (Hereinafter, reference to assistant warden means assistant warden of programs.) The CLAS IVs are responsible for the effective day-to-day operation of the LTS departments. Employees in CLAS I, II, and III job titles are subordinate to the CLAS IVs. Each LTS department contains employees in some or all of these subordinate positions, all of which are included in the historical bargaining unit. The main dif-

ference between the duties of the CLAS IVs and those of their subordinates involves the extent of their responsibilities. The subordinates are assigned by the CLAS IVs to specific programs and/or events which they may plan and operate, while the CLAS IVs are responsible for the operation of the LTS departments and the effective implementation of all programs and events.

■ The first issue is whether, as a matter of law, the CLAS IVs are "State supervisors" exempt from the "preponderance" test included in section 3(r) of the Act (5 ILCS 315/3(r) (West 1994)). The petitioner argues that the Board should not have applied the preponderance test to the CLAS IVs because (1) the clause "State supervisors notwithstanding" exempts them and (2) the prior decisions of the appellate court disagreeing with petitioner's interpretation should be rejected. The Board correctly points out in its brief that this issue is waived.

Prior to the hearing, the parties stipulated that the issues to be resolved were whether the CLAS IVs could be classified as supervisory employees or managerial employees. Following the ALJ's submission of a recommended decision and order, petitioner filed exceptions before the Board. The only exceptions raised were whether the ALJ's findings that CLAS IVs were neither "supervisors" nor "managerial employees" were against the manifest weight of the evidence. At no time did petitioner advance the argument that CLAS IVs were exempt from the statute or raise any statutory construction argument. The failure of a party to raise an argument in its exceptions to the hearing officer's recommended decision and order waives that argument for purposes of review. *Moore v. Illinois State Labor Relations Board* (1990), 206 Ill. App. 3d 327, 337, 564 N.E.2d 213, 219.

■ The next issue is whether the Board's finding that the CLAS IVs are not "supervisors" was against the manifest weight of the evidence. Section 9(i) of the Act (5 ILCS 315/9(i) (West 1994)) makes the Board's decision reviewable under the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1994)). Under the Administrative Review Law, judicial review extends to all questions of law and fact presented by the record. (735 ILCS 5/3—110 (West 1994).) The Board's findings and conclusions are considered *prima facie* true. (735 ILCS 5/3—110 (West 1994).) Courts will not interfere with the Board's expertise and authority unless it has been exercised in an arbitrary and capricious manner. Therefore, the scope of review is limited to a determination of whether the Board's decision is against the manifest weight of the evidence, and the Board's decision can be overturned only if, after viewing the evidence in a light most favorable to the Board, it is determined that no rational trier of fact could have

reached the conclusion reached by the Board. *Chief Judge of the Circuit Court v. American Federation of State, County & Municipal Employees, Council 31* (1992), 153 Ill. 2d 508, 514, 607 N.E.2d 182, 185.

■ In order to ensure that a pro-union bias will not impair a supervisor's ability to apply the employer's policies to subordinates in accordance with the employer's best interests, the Act provides that a bargaining unit may not contain both supervisors and nonsupervisors. (5 ILCS 315/3(s)(1) (West 1994); *Chief Judge*, 153 Ill. 2d at 515, 607 N.E.2d at 186; *City of Freeport v. Illinois State Labor Relations Board* (1990), 135 Ill. 2d 499, 505-06, 554 N.E.2d 155, 158-59.) Section 3(r) states in relevant part:

> " 'Supervisor' is an employee whose principal work is substantially different from that of his or her subordinates and who has authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, direct, reward, or discipline employees, to adjust their grievances, or to effectively recommend any of those actions, if the exercise of that authority is not of a merely routine or clerical nature, but requires the consistent use of independent judgment. Except with respect to police employment, the term 'supervisor' includes only those individuals who devote a preponderance of their employment time to exercising that authority, State supervisors notwithstanding." 5 ILCS 315/3(r) (West 1994).

There is a four-part test to determine whether an employee is a supervisor under section 3(r) of the Act requiring that:

> "(1) the supervisory employee must perform principal work substantially different from that of her subordinates; (2) the supervisory employee must have authority to perform some or all of the 11 functions enumerated in section 3(r); (3) the supervisory employee must consistently use independent judgment in the performance of these 11 enumerated functions; and (4) generally, the supervisory employee must devote a preponderance of her time to exercising the authority to handle these 11 functions." (*Chief Judge*, 153 Ill. 2d at 515, 607 N.E.2d at 186.)

The term "preponderance" means that the employee spends more time on supervisory functions than on any one nonsupervisory function. (*City of Freeport*, 135 Ill. 2d at 532, 554 N.E.2d at 171.) The presence of even one indicium of supervisory authority accompanied by independent judgment is sufficient to support a finding of supervisory status. "Independent judgment" means that the employee makes choices between two or more significant courses of action without substantial review by superiors. *Chief Judge*, 153 Ill. 2d at 516, 607 N.E.2d at 186.

The Board found that the CLAS IVs' principal work is different from that of the subordinates in that the CLAS IVs do not spend a majority of their time developing or running a particular program, as do the subordinates. The subordinates are also not responsible for the effective overall operation of the LTS departments, as are the CLAS IVs.

The Board also made findings regarding each of the 11 indicia of supervisory authority set forth in section 3(r) of the Act. For the purpose of this disposition, it is sufficient to state that the Board found no exercise of supervisory authority to hire, transfer, suspend, lay off, recall, promote, or discharge. The Board found some supervisory authority in CLAS IVs to direct, reward, and discipline employees and to adjust grievances.

Nevertheless, the Board further found that the CLAS IVs are not "supervisors" within the meaning of section 3(r) of the Act because they do not devote the preponderance of their employment time to exercising supervisory authority. They spend only a minimal amount of time adjusting grievances, issuing oral reprimands, recommending superior performance increases to subordinates' pay, and making recommendations concerning probationary employees. Although some CLAS IVs testified that 20% to 25% of their time was spent in assigning tasks to subordinates, the Board found that testimony less than credible and found that the evidence indicated it was more likely that CLAS IVs spend 5% to 6% of their time assigning tasks with supervisory authority. The testimony in general indicated that subordinates kept the assigned programs for several years; most programs changed very little from year to year; the assignments were made only periodically, on an annual, semi-annual, or monthly basis; because of the experience and expertise of the subordinate, little or no explanation regarding the assignments was required; and some CLAS IVs allowed subordinates to volunteer for assignments.

While CLAS IVs spend about 5% of the time devoted to training, this estimate included the nonsupervisory function of ensuring that employees received 40 hours of training. Since quarterly evaluations did not impact salary, they were deemed nonsupervisory, and the Board found preparation of annual evaluations to amount to less than 5% of the CLAS IVs' time. As a result, the Board concluded that (1) the CLAS IVs spend less than 31% of their employment time engaged in supervisory functions and (2) since CLAS IVs do not spend a majority of their time engaged in supervisory functions, the preponderance requirement had not been met.

On the question of whether these findings are against the manifest weight of the evidence, the petitioner's main concern is the

finding that observing and monitoring is not a supervisory function. The Board found that, even if this was deemed a supervisory function, CLAS IVs spend only 15% of their time on this activity and, therefore, the preponderance test would still not be met.

■ Our concern is not that the percentages applied by the Board are against the manifest weight of the evidence, but that a strictly mathematical test was applied at all. In rejecting the contention that CLAS IVs are "managerial employees," the Board determined that they are first-line supervisors, not managers. Therefore, the Board's finding that CLAS IVs are not "supervisors" rests solely on the conclusion that supervisory authority was not exercised a majority of the time.

Petitioner raises the question of whether the Board applied the wrong test for determining whether the CLAS IVs spent a preponderance of their time exercising supervisory authority. Although this issue is waived, this court will consider it because of the significance of the issue (*Faculty Association of District 205 v. Illinois Educational Labor Relations Board* (1988), 175 Ill. App. 3d 880, 885, 530 N.E.2d 548, 552) and because it would be necessary to settle on a definition of "preponderance" in order to decide whether the Board's findings were against the manifest weight of the evidence.

Petitioner argues that the court in *Department of Central Management Services v. Illinois State Labor Relations Board* (1993), 249 Ill. App. 3d 740, 619 N.E.2d 239, *appeal denied* (1993), 153 Ill. 2d 558, 624 N.E.2d 805, set a standard for determining whether the preponderance test had been met inconsistent with a prior determination of the supreme court in *City of Freeport*. We agree.

In *City of Freeport*, the Supreme Court of Illinois considered the "preponderance" test and accepted the Board's interpretation, stating: "The Board has interpreted the term 'preponderance' to mean that the most significant allotment of the employee's time must be spent exercising supervisory functions. [Citation.] In other words, the employee must spend more time on supervisory functions than on any one nonsupervisory function." (*City of Freeport*, 135 Ill. 2d at 532, 554 N.E.2d at 171.) In *Central Management Services*, a third district panel in an opinion of this court interpreted "preponderance" to mean the employee must spend a "majority," or more than 50%, of employment time engaged in supervisory activities. Although correctly noting that in *City of Freeport* the issue of what "preponderance" meant was not specifically raised (*Central Management Services*, 249 Ill. App. 3d at 749, 619 N.E.2d at 245), some definition must have been adopted in *City of Freeport* to determine if the statute was properly applied.

"Preponderance" can mean superiority in numbers or superiority in importance. (Webster's Third New International Dictionary 1791 (1986).) If an employee spends 51% of employment time doing administrative functions and 49% in supervisory functions, the most significant part of the job may not be the administrative matters because of the importance of employee relations. Whether a person is a "supervisor" should be defined by the significance of what that person does for the employer, regardless of the time spent on particular types of functions. No one can expect mathematical certainty in these types of cases.

The test applied in *City of Freeport* is much more reasonable than is an attempt to render mathematically accurate human judgment. Even though a supervisor has done a good job of hiring and training staff to the point that the staff need very little direction to accomplish the objectives of the job, the supervisor still has the authority to direct when appropriate. In this case, the Board recognized that the CLAS IVs had supervisory authority in the areas of discipline and grievance resolution, even though supervisory authority in those areas was not exercised very often. The same should be true of directing. A natural consequence of applying the "majority of time test," if used exclusively, would be that every job in DOC might be unionized. Once a position is included in the collective-bargaining agreement, decisions as to hiring, transferring, discharging, supervising, vacation time, *et cetera* are all removed from the immediate superior to that position. We do not believe this is what the legislature intended.

In support of its position, petitioner points to Justice Miller's dissent in *City of Freeport*. (*City of Freeport*, 135 Ill. 2d at 533-40, 554 N.E.2d at 171-74 (Miller, J., concurring in part and dissenting in part).) In *Village of Downers Grove v. Illinois State Labor Relations Board* (1991), 221 Ill. App. 3d 47, 56, 581 N.E.2d 824, 830, the court recognized that the Act required a supervisor to devote a preponderance of his time exercising authority and the majority of the supreme court in *City of Freeport* interpreted that to mean the actual exercise of supervisory authority. The court in *Village of Downers Grove* recognized that Justice Miller's dissent in *City of Freeport* had merit, but concluded it could not avoid the application of the standard announced by the majority. However, it does not necessarily follow that the majority of the supreme court in *City of Freeport* was creating a strictly mathematical "majority-of-time" test. The Board's use of the majority-of-time test announced in *Central Management Services* was error, and the Board's decision is reversed for that reason.

The petitioner also argues on review that there are compelling

public policy reasons for excluding CLAS IVs from the collective-bargaining unit. That argument, too, was not raised before the Board, but may be considered on remand.

■ The final issue is whether the Board's finding that the CLAS IVs were not "managerial employees" is against the manifest weight of the evidence. A "managerial employee" is one "who is engaged predominantly in executive and management functions and is charged with the responsibility of directing the effectuation of management policies and practices." 5 ILCS 315/3(j) (West 1994).

■ Courts have recognized that the Board has adopted a two-part test. As to the first part of the test, executive and management functions specifically relate to the running of the agency or department, including the establishment of policies and procedures, preparation of the budget, and responsibility that the agency or department operates effectively and efficiently. This requires more than the exercise of professional discretion and technical expertise. The employee must possess and exercise authority and discretion which broadly effects a department's goals and means of achieving its goals. If the employee's role is advisory and subordinate, the employee is not a managerial employee because it is the final responsibility and independent authority to establish and effectuate policy that determines management status. The second part of the test is present when an individual oversees or coordinates policy implementation through development of means and methods of achieving policy objectives, determines the extent to which the objectives will be achieved, and is empowered with a substantial amount of discretion to determine how policies will be effected. *Chief Judge of the Sixteenth Judicial Circuit v. Illinois State Labor Relations Board* (1995), 275 Ill. App. 3d 853, 856-57, 656 N.E.2d 791, 794-95; *City of Evanston v. Illinois State Labor Relations Board* (1992), 227 Ill. App. 3d 955, 974-75, 592 N.E.2d 415, 428.

The Supreme Court of Illinois has stated:

"The authority to make independent decisions and the consequent alignment of the employee's interests with management's are hallmarks of managerial status for purposes of labor law. In a case involving university faculty members, the United States Supreme Court explained:

'Managerial employees must exercise discretion within, or even independently of, established employer policy and must be aligned with management. *** [A]n employee may be excluded as managerial only if he represents management interests by taking or recommending discretionary actions that effectively control or implement employer policy.'

(*National Labor Relations Board v. Yeshiva University* (1980), 444 U.S. 672, 683, 63 L. Ed. 2d 115, 126, 100 S. Ct. 856, 862.)

The Court concluded that the faculty members at issue, unlike faculty members on other college campuses, were managerial employees because of their deep involvement in, and control over, administrative matters.

Moreover, it should be noted that 'managerial status is not limited to those at the very highest level of the governmental entity, for it is enough if the functions performed by the employee sufficiently align him with management such that the employees "should not be in a position requiring them to divide their loyalty to the administration *** with their loyalty to an exclusive collective-bargaining representative." ' *Salaried Employees of North America v. Illinois Local Labor Relations Board* (1990), 202 Ill. App. 3d 1013, 1021, quoting *Board of Regents of the Regency Universities System v. Illinois Educational Labor Relations Board* (1988), 166 Ill. App. 3d 730, 742-43." (*Office of the Cook County State's Attorney v. Illinois Local Labor Relations Board* (1995), 166 Ill. 2d 296, 301-02, 652 N.E.2d 301, 303.)

In that case, however, assistant State's Attorneys were deemed management because they could act with the full power of the State's Attorney in the absence of the State's Attorney and, as such, were surrogates of the State's Attorney. (*Cook County State's Attorney*, 166 Ill. 2d at 304, 652 N.E.2d at 304-05.) Since the court specifically noted that not all publicly employed lawyers must necessarily be deemed managerial employees (*Cook County State's Attorney*, 166 Ill. 2d at 305, 652 N.E.2d at 305), the reasoning employed in that case is unique to the nature of the employees involved therein and does not require a similar result in the case at bar.

In this case, there was no evidence that CLAS IVs established work rules for their subordinates. Nor did they establish policies and procedures for other departments or for the DOC as a whole. The CLAS IVs did not develop administrative directives and only had input regarding institutional directives impacting LTS, which were submitted to their superiors for approval.

Managerial employees are involved in the direction of the governmental enterprise or a major unit thereof. (*Salaried Employees of North America v. Illinois Local Labor Relations Board* (1990), 202 Ill. App. 3d 1013, 1020, 560 N.E.2d 926, 932.) There was no evidence that the CLAS IVs could change the focus or mission of DOC. Since the programmatic area of correctional facilities overseen by the assistant warden of programs included other subdepartments besides LTS, the Board found that LTS was not a "major unit" of

DOC, and we agree. This finding is supported by the DOC organizational chart placed in evidence.

The Board found the CLAS IVs' roles were entirely subordinate and advisory. They requested funds from various nonappropriated sources, such as the inmate benefit fund (IBF), general revenue, and inmate organizations. While CLAS IVs were members of the inmate benefit fund committee, their requests were voted on for approval the same as any other request and could be rejected. Authorizations for expenditures for requested improvements, repairs, and entertainment were submitted to a superior for approval. CLAS IVs did attend meetings with the assistant warden and warden, but not with the Director or Deputy Director of DOC. The Board found the CLAS IVs provided for recreational and social activities of inmates and that was not an executive or management function. They do not possess a level of authority and independent judgment sufficient to broadly affect the purposes of DOC or the means to effectuate those purposes.

Similarly, the Board found the CLAS IVs did not satisfy the second part of the analysis. The Board found that the Director of the DOC and his administrative staff develop the methods, means and extent of reaching DOC's policy objectives through administrative directives. Although a CLAS IV may submit a proposed administrative directive, it would need to be approved by higher level personnel, and none had ever submitted a proposed administrative directive. Through institutional directives, the warden ensures the policy objectives set forth in the administrative directives are adopted and implemented at each facility, and the assistant warden of programs ensures that the administrative directives are adopted and implemented for programmatic areas. CLAS IVs have some input into the institutional directives which impact their area, and they may draft them, but the institutional directives must be reviewed and approved by the warden before becoming effective. CLAS IVs do not implement institutional directives not based on administrative directives or without approval by a superior, and do not draft institutional directives impacting other departments, the facility, or the DOC as a whole. While CLAS IVs are responsible for informing subordinates of new directives and ensuring institutional directives are followed in LTS, the Board found that the warden and assistant warden were the managers who oversaw and coordinated policy implementation through "first-line supervisors" such as CLAS IVs. In this regard, CLAS IVs have no discretion and must conform to their employer's established policies. The CLAS IVs' very limited authority regarding implementation of management policy does not constitute the effectuation of management policies and functions. (See *Village of Elk*

*Grove Village v. Illinois State Labor Relations Board* (1993), 245 Ill. App. 3d 109, 122-23, 613 N.E.2d 311, 320.) As a result, the Board's finding that the CLAS IVs are not management employees within the meaning of section 3(j) of the Act is not against the manifest weight of the evidence.

For the foregoing reasons, the order of the Board is reversed, and the cause is remanded to the Board for further determination of whether the preponderance test has been met. On remand, the Board may reopen the evidence as it deems necessary.

Reversed and remanded.

STEIGMANN and GARMAN, JJ., concur.