THE DEPARTMENT OF CENTRAL MANAGEMENT SERVICES/THE DEPARTMENT OF HEALTHCARE AND FAMILY SERVICES, Petitioner-Appellant, v. ILLINOIS LABOR RELATIONS BOARD, STATE PANEL, *et al.*, Respondents-Appellees.

Fourth District   No. 4—08—0210

Opinion filed February 5, 2009.

Lisa Madigan, Attorney General, of Chicago (Mark W. Bennett (argued) and Joseph M. Gagliardo, Special Assistant Attorneys General, of counsel), for appellant.

Stanley Eisenstein and Judiann Chartier, both of Katz, Friedman, Eagle, Eisenstein, Johnson & Barek, P.C., of Chicago, for appellee Illinois Nurses Association.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Janon E. Fabiano (argued), Assistant Attorney General, of counsel), for other appellees.

JUSTICE APPLETON delivered the opinion of the court:

Petitioner, the Department of Central Management Services (employer), brings this action for direct review of a decision by the Illinois Labor Relations Board, State Panel (Board), declaring the Illinois Nurses Association (union) to be the exclusive bargaining representative of all public service administrators, option 8, in the Bureau of Administrative Litigation, office of the Inspector General, Department of Healthcare and Family Services, except, as the "Certificate of Representative" says, supervisory, managerial, and confidential employees. See *Illinois Nurses Ass'n*, 23 Pub. Employee Rep. (Ill.) par. 173, No. S—RC—07—036 (Illinois Labor Board, State Panel, October 30, 2007) (hereinafter 23 Pub. Employee Rep. (Ill.) par. 173). These employees are attorneys who represent the agency in internal hearings before administrative law judges.

For two reasons, the employer urges us to reverse the Board's decision outright or at least reverse it and remand the case for reconsideration: (1) all of the attorneys in question are managerial employees, and (2) the proposed bargaining unit is inappropriate because it carves a subset of employees out of a larger, centralized classification.

The Board found the attorneys were not managerial employees. Because that finding is not clearly erroneous, we decline to overturn it. The Board's decisions have created a "presumption of inappropriateness" in situations in which the union seeks to represent only a portion of the employees who perform duties in identical job classifications. The Board could have found sufficient evidence, however, to rebut that presumption. The State employs many more attorneys than the six staff attorneys in the Bureau of Administrative Litigation; option 8L of the classification of public service administrator consists of approximately 134 attorneys. But the record reveals little or nothing about these numerous attorney positions outside the Bureau (*e.g.*, their skills, functions, hours, or working conditions). Given this dearth of information, one could not validly conclude that all of the attorneys in option 8L belong in the same bargaining unit. Therefore, we affirm the Board's decision.

## I. BACKGROUND

### A. The Union's Petition and the Employer's Position Statement

On September 5, 2006, the union filed with the Board a petition to become the exclusive bargaining representative of all public service administrators, option 8, in the Bureau of Administrative Litigation, office of the Inspector General, Department of Healthcare and Family Services. See 5 ILCS 315/9(a)(1) (West Supp. 2007). (In their briefs, the parties agree that the employees in question are, more precisely, public service administrators, option 8L, but the union's petition and the Board's "Certificate of Representative" merely say "option 8." It appears, however, that the Bureau of Administrative Litigation has no option 8 employees other than option 8Ls; therefore, failing to specify the subset of option 8 apparently makes no practical difference.) In its petition, the union stated that 30% of the employees requested a secret ballot to determine whether the Board should certify the union as their exclusive bargaining agent. See 5 ILCS 315/9(a)(1) (West Supp. 2007).

The Board scheduled an investigative hearing for October 5 and 6, 2006, and requested the employer to submit a comprehensive and detailed position statement addressing the appropriateness of the proposed bargaining unit. See 80 Ill. Adm. Code §1210.100(a)(3), as

amended by 28 Ill. Reg. 4172, 4174, eff. February 19, 2004. On October 2, 2006, the employer submitted a position statement arguing that the Board should dismiss the union's petition for three reasons. First, public service administrators, option 8L, were managerial employees, both as a matter of law and as a matter of fact. Second, because the union's petition was limited to the six option 8Ls in the Bureau of Administrative Litigation within the office of the Inspector General of the Department of Healthcare and Family Services, the petition impermissibly sought to carve out a handful of employees from a statewide classification. Third, the only appropriate unit of state-employed attorneys was the existing unit, S—VR—91—10 (VR—10), represented by the American Federation of State, County and Municipal Employees, Council 31 (AFSCME) (see *State of Illinois, Department of Central Management Services*, 21 Pub. Employee Rep. (Ill.) par. 205, No. S—UC—05—006, at 748, 755 (Illinois Labor Board, State Panel, November 4, 2005)) (hereinafter 21 Pub. Employee Rep. (Ill.) par. 205).

## B. The Administrative Hearing

On October 5 and 6, 2006, the Board held an administrative hearing, in which the following evidence emerged.

### 1. *The State's System of Classifying Jobs*

To make sure that state employees who hold comparable positions receive comparable pay, the State has devised a system of classifying positions. According to the class specification for public service administrator, the distinguishing feature of that classification is the "management nature of the work": "the exercise of discretion in controlling or directing the organization's supportive program" and the "responsibility to direct the effectuation of management policies." There are approximately 4,000 public service administrators statewide. In deciding which positions belong in the classification of public service administrator, the State considers the following factors, which overlap to some extent: the nature and variety of the work; the supervision the employee receives; the supervision the employee exercises; the guidelines available to the employee, such as job manuals or step-by-step regulations; the extent to which the position requires originality, independent thinking, and sophisticated analysis; the decisions and commitments the employee must make in the position (*i.e.*, the weightiness or public consequence of the employee's decisions or the employee's ability to commit an agency to a course of action); and the educational and experiential requirements of the position.

The State has divided the classification of public service administrator into eight options. Option 8 consists of employees who must

possess a license to perform the type of work their position requires— for example, attorneys, nurses, and engineers. There are approximately 460 employees in option 8. The State has further divided option 8 into options 8A through 8Z, to designate the various licensed professions. Option 8L consists of attorneys. There are approximately 136 employees in option 8L, statewide. The six staff attorneys in the Bureau of Administrative Litigation—the only employees whom the union has petitioned to represent in this case—are option 8Ls. They are Martin S. Feldman, Joan T. Cherry, Alan M. Polikoff, Avery A. Gerstein, Henry M. Soltysinski Jr., and Daniel E. Falb. According to employer's exhibit No. 7, the agency's office of General Counsel has seven additional option 8Ls—Jeanette B. Cuomo, Thomas K. Fischer, William C. Kurylak, Dora L. McNew-Clarke, Vickie V. Fair, Stacy L. Cooper, and Leo J. Howard, the first four of whom are administrative law judges or hearing referees—and the office of the Director has one option 8L, Shannon M. Verner. The six staff attorneys employed in the Bureau of Administrative Litigation appear before the administrative law judges and hearing referees employed in the office of General Counsel. Also, in his testimony, the agency's Inspector General, John C. Allen IV, mentioned a "staff attorney" in the General Counsel's office, Dan Leikvold (whose name does not appear in employer's exhibit No. 7). According to Allen, Leikvold reviewed exceptions and "ruled on" the administrative law judges' recommended decisions.

Of the approximately 960 classifications in the State's classification system, not a single classification existed in which some positions were included in a bargaining unit and other positions were excluded (unless the excluded positions were excluded for statutory reasons, *i.e.*, the employees in those positions were managerial, supervisory, or confidential employees)—that is, until the Board's decision in the present case. Further, with one exception, no bargaining unit in the State has been limited to a single agency when the classification represented by the unit existed statewide in more than one agency— that is, until now. The lone exception was the educators in the Illinois School for the Deaf in Jacksonville; they were represented by a historically recognized unit, HR—10, which predated the Act.

### 2. *A Preexisting Bargaining Unit That Represents Attorneys*

In 1991, the State and AFSCME stipulated, and the Board certified, that the RC—10 bargaining unit was the only appropriate unit of attorneys working statewide. (We assume that RC—10 is the same unit as VR—10, to which the employer refers in its position statement to the Board.) RC—10 included the classifications of technical advisor advanced program specialist, technical advisor III, technical advisor II,

technical advisor I, and hearings referee. The positions in the classification of technical advisor advanced program specialist were previously classified as public service administrator, option 8L, but because the classification of public service administrator, by definition, could not include any positions subject to collective bargaining, the option 8Ls were reclassified upon their inclusion in RC—10. The State and AFSCME further stipulated that any state-employed attorneys not included in the RC—10 bargaining unit were excluded because of their status as managerial employees, supervisors, or confidential employees. The six staff attorneys in the Bureau of Administrative Litigation were not included in RC—10.

### 3. *The Office of Inspector General*

The agency has four divisions or primary areas of responsibility: (1) the division that oversees Medicaid and other medical programs, (2) the Division of Child Support Enforcement, (3) the Office of Energy Assistance, and (4) Group Health Purchasing. Further, the agency has an office of the Inspector General, which investigates allegations of fraud, substandard care, and other wrongdoing within the medical programs. The Inspector General also audits the agency's programs and, generally, is responsible for ensuring the integrity of the programs.

Sections 12—13.1.(b) and (f) of the Illinois Public Aid Code set forth the powers and duties of the Inspector General:

"(b) In order to prevent, detect, and eliminate fraud, waste, abuse, mismanagement, and misconduct, the Inspector General shall oversee the Department of Healthcare and Family Services' integrity functions, which include, but are not limited to, the following:

(1) Investigation of misconduct by employees, vendors, contractors[,] and medical providers.

(2) Audits of medical providers related to ensuring that appropriate payments are made for services rendered and to the recovery of overpayments.

(3) Monitoring of quality assurance programs generally related to the medical assistance program and specifically related to any managed[-]care program.

(4) Quality[-]control measurements of the programs administered by the Department of Healthcare and Family Services.

(5) Investigations of fraud or intentional program violations committed by clients of the Department of Healthcare and Family Services.

(6) Actions initiated against contractors or medical providers for any of the following reasons:

(A) Violations of the medical assistance program.

(B) Sanctions against providers brought in conjunction with the Department of Public Health or the Department of Human Services (as successor to the Department of Mental Health and Developmental Disabilities).

(C) Recoveries of assessments against hospitals and long-term care facilities.

(D) Sanctions mandated by the United States Department of Health and Human Services against medical providers.

(E) Violations of contracts related to any managed[-] care programs.

(7) Representation of the Department of Healthcare and Family Services at hearings with the Illinois Department of Professional Regulation in actions taken against professional licenses held by persons who are in violation of orders for child[-]support payments.

\* \* \*

(f) To carry out his or her duties as described in this Section, the Inspector General and his or her designees shall have the power to compel[,] by subpoena[,] the attendance and testimony of witnesses and the production of books, electronic records[,] and papers as directly related to public assistance programs administered by the Department of Healthcare and Family Services or the Department of Human Services (as successor to the Department of Public Aid)." 305 ILCS 5/12—13.1(b), (f) (West Supp. 2007).

The office of the Inspector General is divided into five bureaus: (1) the Bureau of Medicaid Integrity, which is responsible for auditing state Medicaid programs; (2) the Bureau of Investigations, which investigates potential fraud by recipients of Medicaid; (3) the Bureau of Information Technology, which collects and analyzes data to identify trends suggestive of fraud by providers or recipients of services in the medical-assistance programs; (4) the Bureau of Internal Affairs, which investigates wrongdoing by agency employees; and (5) the Bureau of Administrative Litigation, which prosecutes vendors who have engaged in wrongdoing in connection with the medical-assistance programs.

### 4. *The Bureau of Administrative Litigation*

The Bureau of Administrative Litigation consists of one bureau chief, six staff attorneys, and an executive I. At the time of the administrative hearing, Feldman was serving both as acting bureau chief and as a staff attorney. In its brief, the union informs us that Feldman now is merely a staff attorney and no longer is the acting bureau chief.

The six staff attorneys in the Bureau of Administrative Litigation

represent the agency in administrative hearings, in which providers are the respondents. Providers can incur penalties, including suspension or termination from participation in the agency's medical-assistance programs, for violating the agency's rules or providing substandard care to patients. If the Inspector General determines, through an audit, that the agency has overpaid a provider, the staff attorneys bring a recoupment action against the providers. These actions are administrative; the staff attorneys may not represent the agency in court. The staff attorneys also represent the agency, the Department of Public Health, and the Department of Human Services in Medicaid decertification actions against long-term care facilities and in actions to terminate provider agreements on the basis of certification surveys the agency performs every year. They also represent the agency's Division of Child Support Enforcement in administrative hearings before other licensing agencies to have the state licenses or certifications of noncustodial parents revoked, suspended, or not renewed because of their failure to pay child support. The licensing agencies include the Department of Finance and Professional Regulation, Illinois Gaming Board, Department of Nuclear Safety, Department of Agriculture, and Department of Children and Family Services. The staff attorneys also represent the agency and the Department of Revenue in administrative hearings to suspend a provider's participation in the medical-assistance programs because of the provider's failure to pay taxes to the State.

### 5. *The Duties and Routine of Staff Attorneys*

The six staff attorneys in the Bureau of Administrative Litigation are responsible for preparing cases and presenting them to administrative law judges in the agency. As we said, these cases are administrative actions to suspend or terminate a provider's participation in the medical-assistance programs, to recover overpayments, or to revoke a license or certification because of failure to pay taxes or child support. Allen described the duties of the staff attorneys as follows: "preparing witnesses, reviewing cases, identifying documentation, formulating witness lists and evidence lists, presenting arguments and evidence to the administrative law judge, preparing exceptions[,] *** drafting rules as assigned[,] and some legal research." He also testified that the staff attorneys drafted settlement agreements and "decision memoranda" to accompany the settlement agreements. Occasionally, the staff attorneys worked with attorneys in other agencies, such as when someone's license was being revoked or someone was suing the agency. A few times, the Inspector General has requested the staff attorneys' help in drafting rules.

The union called three staff attorneys: Gerstein, Polikoff, and Soltysinski. They testified they had discretion to decide what questions to ask witnesses, the order in which to call the witnesses, the documents they would present in the hearing, and the closing argument they would make. Otherwise, they had to obtain the approval of Feldman as acting bureau chief, who sometimes, in turn, had to obtain the approval of his superiors. Feldman assigned cases to the staff attorneys under his supervision, and the referring bureaus specified the charges and the penalties. The staff attorneys had no authority to change the charges or seek different penalties, although they were expected to evaluate the case to see if the elements of the alleged violation could be proved. Even if they concluded the charges could not be proved, they had no authority to withdraw the case. Instead, they had to bring their concerns to Feldman, who, after conferring with the referring bureau, sometimes told the staff attorneys to proceed with the case even though he agreed the case could not be proved. The only document the staff attorneys were permitted to sign was exceptions to the recommended decisions of administrative law judges. They could not sign the notice or complaint that went out to the provider; the bureau chief had to sign it in the Inspector General's name. Settlement agreements and decision memoranda went up the chain of command all the way to the Director. According to the testimony of the staff attorneys, Feldman reviewed everything they wrote, often making substantive revisions. They did not know how much time Feldman spent reviewing any one document—probably less time than former bureau chiefs, because while holding down the job of acting bureau chief, Feldman also was working as a staff attorney and had a caseload of his own.

## C. The Board's Decision

In her recommended decision, the administrative law judge dismissed the union's petition on the grounds that (1) the petition carved a subset of employees out of a larger, centralized classification, and the union failed to rebut the presumption of inappropriateness; and (2) the staff attorneys were managerial employees as a matter of fact and as a matter of law.

The Board declined to accept the administrative law judge's recommendation. The Board said:

"The preference for large, functionally-based [sic] units was, and continues to be, an important consideration, yet[,] [in some of our previous decisions,] excessive concern with avoiding fragmentation and promoting economy and efficiency in public bargaining and contract administration consumed not only the employees' right to organize, but also the criteria set forth in [s]ection 9(b) [(5 ILCS 315/9(b) (West Supp. 2007))]. The Act demands that we balance

between these extremes so as to avoid regularly and completely depriving public employees of their right granted therein. After reviewing the petitioned-for unit in light of the considerations set forth in [s]ection 9(b), [we find that] only the fragmentation factor favors dismissal, and by itself, it is insufficient to deny the [union's] petition.

As an alternative, the State offers the RC—10 bargaining unit, in existence since 1991, represented by a union other than [p]etitioner, as the only appropriate unit for the petitioned-for employees. However, the representative of the RC—10 unit does not seek herein to represent the petitioned-for employees, nor has it [done so] in the [16] years since that unit was formed. It is fundamentally at odds with the Act itself to place the petitioned-for employees' right to organize completely under the control of a third party, and thus, the [e]mployer's suggestion in this regard is without merit.

\* \* \*

At most, in this matter, the petitioned-for employees exercise professional discretion and technical expertise, but \*\*\* this is insufficient to exclude them from collective bargaining under the managerial exclusion. Correspondingly, there is no evidence that these employees possess final responsibility and independent authority to establish and effectuate policy for the [e]mployer. \*\*\* There is no indication that the petitioned-for employees have substantial discretion, or even a role, in developing the means and methods of reaching the agency's policy objectives or responsibility for determining the extent to which such objectives will be achieved. Thus, the petitioned-for employees are not managerial within the meaning of [s]ection 3(j) of the Act [(5 ILCS 315/3(j) (West Supp. 2007))]."

The Board ordered that a secret ballot election be conducted among the six staff attorneys, in which they would receive the opportunity to vote on whether they desired representation by the union or no representation.

This appeal followed.

## II. ANALYSIS

### A. Standards of Review

We review questions of law *de novo. City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205, 692 N.E.2d 295, 302 (1998). We ask whether the Board's purely factual findings are against the manifest weight of the evidence. *City of Belvidere*, 181 Ill. 2d at 204, 692 N.E.2d at 302. Insomuch as the Board decided questions that were a mixture of fact and law, we ask whether the Board's decision is clearly erroneous. *City of Belvidere*, 181 Ill. 2d at 205, 692 N.E.2d at 302.

## B. Managerial Employees

### 1. *The Traditional Test*

■ The employer argues the staff attorneys in the Bureau of Administrative Litigation are managerial employees and, therefore, have no right to organize and bargain collectively. See 5 ILCS 315/3(n) (West Supp. 2007); 5 ILCS 315/6(a) (West 2006). The Board and the appellate court have applied two tests to determine whether an employee is a managerial employee: (1) the traditional test, which considers whether the employee is a managerial employee as a matter of fact (21 Pub. Employee Rep. (Ill.) par. 205, at 753), and (2) the alternative test, which considers whether the employee is a managerial employee as a matter of law (*Chief Judge v. Illinois State Labor Relations Board*, 178 Ill. 2d 333, 343, 687 N.E.2d 795, 799 (1997); 21 Pub. Employee Rep. (Ill.) par. 205, at 753-54). According to the employer, both of these tests show that the staff attorneys are managerial employees.

The traditional test considers, factually, whether the employee conforms to the definition of a "managerial employee" in section 3(j) of the Illinois Public Labor Relations Act (Act) (5 ILCS 315/3(j) (West Supp. 2007)). That statute defines "managerial employee" as follows: "[A]n individual who is engaged predominantly in executive and management functions and is charged with the responsibility of directing the effectuation of management policies and practices." 5 ILCS 315/3(j) (West Supp. 2007). Thus, the statute sets down two criteria, both of which the employee must meet to be considered a managerial employee. First, the employee must be engaged predominantly in executive and management functions. Second, the employee must be charged with the responsibility of directing the effectuation of management policies and procedures.

The Act does not define "executive and management functions," but the Board and appellate court have said that these functions "relate to running a department and include such activities as formulating department policy, preparing the budget, and assuring the efficient and effective operations of the department." *Village of Elk Grove Village v. Illinois State Labor Relations Board*, 245 Ill. App. 3d 109, 121-22, 613 N.E.2d 311, 320 (1993); see also 21 Pub. Employee Rep. (Ill.) par. 205, at 753. "Other executive and management functions include using independent discretion to make policy decisions as opposed to following established policy, changing the focus of an employer's organization, being responsible for day[-]to[-]day operations, negotiating on behalf of an employer with its employees or the public[,] and exercising authority to pledge an employer's credit." 21

Pub. Employee Rep. (Ill.) par. 205, at 753. An employee is not a management employee if he or she serves merely a subordinate or advisory function in the development of policy, for "it is the final responsibility and independent authority to establish and effectuate policy that determines managerial status under the Act." *City of Evanston v. Illinois State Labor Relations Board*, 227 Ill. App. 3d 955, 975, 592 N.E.2d 415, 428 (1992). As we have held, this criterion "requires more than the exercise of professional discretion and technical expertise. The employee must possess and exercise authority and discretion which broadly [a]ffects a department's goals and means of achieving its goals." *Department of Central Management Services v. Illinois State Labor Relations Board*, 278 Ill. App. 3d 79, 87, 662 N.E.2d 131, 136 (1996).

As for the second criterion, an employee directs the effectuation of management policies and procedures if the employee "oversees or coordinates policy implementation through development of means and methods of achieving policy objectives, determines the extent to which the objectives will be achieved, and is empowered with a substantial amount of discretion to determine how policies will be effected." *Department of Central Management Services*, 278 Ill. App. 3d at 87, 662 N.E.2d at 137. It is not enough that the employee "merely performs duties essential to the employer's ability to accomplish its mission." 21 Pub. Employee Rep. (Ill.) par. 205, at 753. Instead, the employee "must possess the authority or responsibility to determine the specific methods or means of how the employer's services will be provided." 21 Pub. Employee Rep. (Ill.) par. 205, at 753. "Managerial employees are involved in the direction of the governmental enterprise or a major unit thereof." *Department of Central Management Services*, 278 Ill. App. 3d at 88, 662 N.E.2d at 137.

The employer argues that the staff attorneys in the Bureau of Administrative Litigation are managerial employees because they do the following:

"[They] mak[e] daily decisions with respect to case strategy[,] specif[y] charges against the alleged wrong-doer[,] identif[y] potential witnesses and documentary evidence needed[,] engag[e] in appropriate discovery to gather the information [they have] determined is necessary[,] schedul[e] and attend[ ] pre[ ]hearing conferences on behalf of the [agency,] prepare[ ] witnesses and their testimony[,] and present[ ] the [agency's] case in the hearing. *** In addition, the petitioned-for employees may draft rules and legislation[,] work with the Attorney General's office preparing cases when [the agency] is the plaintiff in a civil action[,] work with state and federal prosecutors in preparing criminal cases

against providers[,] prepare exceptions to [a]dministrative [l]aw [j]udges' recommended decisions, and prepare [d]ecision [m]emos to authorize settlements."

■ Mostly, these are tasks that any attorney would perform in the course of litigation. Again, the status of managerial employee "requires more than the exercise of professional discretion and technical expertise." *Department of Central Management Services*, 278 Ill. App. 3d at 87, 662 N.E.2d at 136. By using their professional discretion and skills of legal analyses, the staff attorneys "perform[ ] duties essential to the employer's ability to accomplish its mission," but it does not follow that they are managerial employees. 21 Pub. Employee Rep. (Ill.) par. 205, at 753. They have no independent authority to settle a case or withdraw a charge. They do not determine the means by which the Inspector General accomplishes his statutory duties. They do not decide the extent to which the policy objectives of the Inspector General will be achieved. The referring bureau determines the charges and sanctions in each case. Very rarely do the staff attorneys draft a rule or legislation; therefore, this infrequent activity would not cause them to be "predominantly" engaged in executive or management functions. 5 ILCS 315/3(j) (West Supp. 2007). Besides, their superiors review any rule or legislation they draft, and the record appears to contain no evidence that their superiors approve the proposed rule or legislation "as a matter of course," without substantive revision. 21 Pub. Employee Rep. (Ill.) par. 205, at 754. The Board could reasonably conclude that, under the traditional test, the staff attorneys in this case do not meet the criteria for being managerial employees.

## 2. *The Alternative Test*

■ In *Office of the Cook County State's Attorney v. Illinois Local Labor Relations Board*, 166 Ill. 2d 296, 305, 652 N.E.2d 301, 305 (1995), the supreme court held that because a "detailed statutory apparatus" described the powers and duties of assistant State's Attorneys and because assistant State's Attorneys were " 'generally clothed with all the powers and privileges of the State's Attorney' " (*Cook County State's Attorney*, 166 Ill. 2d at 303, 652 N.E.2d at 304, quoting *People v. Nahas*, 9 Ill. App. 3d 570, 575, 292 N.E.2d 466, 470 (1973)), they were managerial employees as a matter of law and fact-finding was unnecessary to determine whether they were managerial employees (*Cook County State's Attorney*, 166 Ill. 2d at 305, 652 N.E.2d at 305). The employer argues that the staff attorneys in this case likewise are managerial employees as a matter of law, because "as designees of the Inspector General in the performance of his *statutory* duties, [they] have the power to commence and prosecute enforcement

actions, give legal opinions, and take numerous discretionary actions that effectively control or implement the statutes, regulations, and policies [a]ffecting the [agency]." (Emphasis in original.)

The staff attorneys in this case are not comparable to assistant State's Attorneys. See *Cook County State's Attorney*, 166 Ill. 2d at 305, 652 N.E.2d at 305 ("This is not to say that all publicly employed lawyers must necessarily be deemed managerial employees under the Labor Act"). The supreme court deemed assistant State's Attorneys to be managerial employees as a matter of law because they could act with the full power of the State's Attorney in his or her absence. *Cook County State's Attorney*, 166 Ill. 2d at 304, 652 N.E.2d at 304-05; *Department of Central Management Services*, 278 Ill. App. 3d at 88, 662 N.E.2d at 137 (distinguishing *Cook County State's Attorney* on that basis). The staff attorneys in the Bureau of Administrative Litigation are not surrogates of the Inspector General; they are not assistant Inspectors General. In the Inspector General's absence, they would have no independent authority, for example, to investigate misconduct by employees, vendors, contractors, and medical providers; audit medical providers; or monitor quality-assurance programs. See 305 ILCS 5/12—13.1(b)(1), (b)(2), (b)(3) (West Supp. 2007). That is to say, they would not be able to do those things solely by virtue of being staff attorneys. The Inspector General can designate employees as having "the power to compel by subpoena the attendance and testimony of witnesses and the production of books, electronic records[,] and papers as directly related to public[-]assistance programs administered by the [agency]." 305 ILCS 5/12—13.1(f) (West Supp. 2007). An employee so designated would be able to do those things not because of any statutory powers of his or her position but because the Inspector General designated that employee. Assistant State's Attorneys, once they are appointed, do not require any designation by the State's Attorney. Solely by virtue of being assistant State's Attorneys, they are " 'clothed with all the powers and privileges of the State's Attorney; and all acts done by [assistant State's Attorneys] in that capacity must be regarded as if done by the State's Attorney himself.' " *Cook County State's Attorney*, 166 Ill. 2d at 303, 652 N.E.2d at 304, quoting *Nahas*, 9 Ill. App. 3d at 575-76, 292 N.E.2d at 470. Section 12—13.1(b) of the Illinois Public Aid Code (305 ILCS 5/12—13.1 (West Supp. 2007)) describes the powers and duties of the Inspector General, but it does not describe the powers and duties of the staff attorneys. The statute does not so much as mention them, let alone clothe them with any authority.

### C. Feldman as a Managerial Employee or Supervisor

In a footnote to its brief, the employer argues that Feldman, in his

capacity as acting bureau chief, meets the statutory definitions of a managerial employee (5 ILCS 315/3(j) (West Supp. 2007)) and supervisor (5 ILCS 315/3(r) (West Supp. 2007)). We need not consider that argument, because the union represents to us, in its brief, that Feldman no longer is the acting bureau chief. The employer does not dispute that representation. We will not decide whether Feldman used to be a managerial employee or supervisor. The question now is academic. A case on appeal is moot to the extent that the reviewing court's decision could have no practical effect on the parties. *Bunge Corp. v. Lewis*, 146 Ill. App. 3d 1094, 1097, 497 N.E.2d 867, 868 (1986).

### D. The Appropriateness of the Proposed Bargaining Unit

#### 1. *Carving Six Employees Out of Larger Classifications*

The employer argues the Board should have dismissed the union's petition because the petition seeks to carve a subset of employees out of a larger, centralized classification. Section 9(b) of the Act states as follows:

"The Board shall decide in each case, in order to assure public employees the fullest freedom in exercising the rights guaranteed by this Act, a unit appropriate for the purpose of collective bargaining, based upon but not limited to such factors as: historical pattern of recognition; community of interest including employee skills and functions; degree of functional integration; interchangeability and contact among employees; fragmentation of employee groups; common supervision, wages, hours[,] and other working conditions of the employees involved; and the desires of the employees. For purposes of this subsection, fragmentation shall not be the sole or predominant factor used by the Board in determining an appropriate bargaining unit." 5 ILCS 315/9(b) (West Supp. 2007).

The Board has held that fragmentation of a classification raises a presumption that the proposed bargaining unit is inappropriate. The Board has said:

"[W]here the employing public entity has an established and centralized job classification system, a presumption of inappropriateness is warranted solely by virtue of the fact that the [p]etitioner has sought only a portion of employees who perform duties in identical job classifications. In the public sector, a commonality of functions and community of interest generally exists among people in the same job classification[,] which, as here, would often override such specific factors as common supervision and functional integration." *Du Page County Board*, 1 Pub. Employee Rep. (Ill.) par. 2003, Nos. S—RC—9, S—RC—17, at 7 (ISLRB April 26, 1985) (hereinafter 1 Pub. Employee Rep. (Ill.) par 2003).

The Board has provided the following rationale for this "presumption of inappropriateness":

" '[I]n the public sector, the concepts of community of interest and commonality in wages, hours[,] and working conditions are given expansive interpretations, to yield broad-based bargaining units whenever feasible. Larger, broad-based units are preferred in order to facilitate stability in labor relations and avoid excessive expense and difficulty in public bargaining and administration.' " *General Service Employees Union, Local 73*, 3 Pub. Employee Rep. (Ill.) par. 3033, No. L—RC—87—14, at 245 (ILLRB October 30, 1987) (hereinafter 3 Pub. Employee Rep. (Ill.) par. 3033), quoting *American Federation of State, County & Municipal Employees*, 2 Pub. Employee Rep. (Ill.) Par. 3027, No. L—RC—86—05, at IX—130 (ILLRB November 13, 1986).

The employer makes the following observations. The six staff attorneys in the Bureau of Administrative Litigation are in the classification of public service administrator, which, statewide, consists of approximately 4,000 employees. Further, the six staff attorneys are in the subclassification of public service administrator, option 8, consisting of employees who need a license to perform the duties of their positions, and approximately 460 employees statewide are in option 8. Further, the six staff attorneys are in the subclassification of option 8 known as option 8L, consisting entirely of attorneys, and approximately 134 employees statewide are in that subclassification. The employer argues that under the Board's previous decisions, a "presumption of inappropriateness" arises because the union seeks to represent "only a portion of employees who perform duties in identical job classifications." 1 Pub. Employee Rep. (Ill.) par. 2003, at 7.

As the Board seems to recognize in its decision in the present case, the "presumption of inappropriateness" is difficult to square with section 9(b), which says: "[F]ragmentation shall not be the sole or predominant factor used by the Board in determining an appropriate bargaining unit." 5 ILCS 315/9(b) (West Supp. 2007). Treating fragmentation as presumptively decisive seems to elevate it to predominance.

In any event, like all presumptions, this "presumption of inappropriateness" is rebuttable. Once evidence contrary to the presumption is introduced, the bubble bursts—the presumption vanishes. Then the issue will be determined as if no presumption ever existed. *Lipscomb v. Sisters of St. Francis Health Services, Inc.*, 343 Ill. App. 3d 1036, 1041, 799 N.E.2d 293, 298 (2003), quoting *Lehman v. Stephens*, 148 Ill. App. 3d 538, 551, 499 N.E.2d 103, 112 (1986). To rebut the

presumption, the evidence must be " 'sufficient to support a finding of the nonexistence of the presumed fact.' " *Franciscan Sisters Health Care Corp. v. Dean*, 95 Ill. 2d 452, 463, 448 N.E.2d 872, 877 (1983), quoting M. Graham, *Presumptions in Civil Cases in Illinois: Do They Exist?* 1977 S. Ill. U. L.J. 1, 24. The weight of the rebutting evidence will depend on the strength of the presumption. *Franciscan Sisters*, 95 Ill. 2d at 463, 448 N.E.2d at 877. The trier of fact will weigh the persuasiveness of the rebutting evidence against the persuasiveness of the presumption. " '[M]ost presumptions should, where applicable at all, continue to operate unless and until the evidence persuades the trier at least that the non[ ]existence of the presumed fact is as probable as its existence.' " W. Shipley, Annot., *Effect of Presumption as Evidence or Upon Burden of Proof, Where Controverting Evidence Is Introduced*, 5 A.L.R.3d 19, 57 n.14 (1966), quoting E. Morgan, *Instructing the Jury Upon Presumptions and Burden of Proof*, 47 Harv. L. Rev. 59, 83 (1933).

It follows that the strength of the rebutting evidence, relative to the strength of the presumption, is a question of fact. Our deference to the Board is greatest with respect to questions of fact. See 735 ILCS 5/3—110 (West 2006). The theory behind the presumption is that "[i]n the public sector, a commonality of functions and community of interest generally exist[ ] among people in the same job classification[,] which, as here, would often override such specific factors as common supervision and functional integration." 1 Pub. Employee Rep. (Ill.) par. 2003, at 7. In the circumstances of this case, a reasonable trier of fact would not necessarily consider this presumption to be strong. The classification system is not perfect; it is approximate and, to some degree, subjective; it inevitably will blur distinctions between positions. For example, the classification of public service administrators (and, therefore, the subclassification of option 8L) is supposed to contain only managerial employees, but, clearly, the six staff attorneys in this case are far from being managers. There is a gap between the class specification and the reality of what certain employees in that class do on the job. The presumption of inappropriateness can be rebutted by evidence that the classification encompasses employees who do not, in fact, have the same functions and community of interest.

The record reveals that the option 8Ls in the agency consist not only of the six staff attorneys in the Bureau of Administrative Litigation, who serve as advocates for the agency in administrative hearings, but also administrative law judges, hearing referees, and a staff attorney in the office of General Counsel. It is not difficult to surmise why these two groups of attorneys are in different divisions of the

agency. The administrative law judges and hearing referees preside over administrative hearings and write recommended decisions. The staff attorney in the office of General Counsel "rules on" the recommended decisions of administrative law judges and the exceptions thereto. While the attorneys in the Bureau of Administrative Litigation are expected to be advocates, the attorneys in the office of General Counsel are expected to be impartial decision-makers. The integrity of the adversary system demands a rigorous segregation of those two functions. Thus, the record contains evidence from which a reasonable trier of fact could conclude that not all the attorneys in option 8L have the same functions and community of interest. The presumption of inappropriateness was rebutted and, therefore, is irrelevant.

The record does not reveal what the other approximately 120 attorneys in option 8L do or what their wages, hours, and other working conditions are. Thus, the Board could have reasonably decided that the record afforded an insufficient evidentiary basis for concluding that all 134 employees in option 8L belonged in the same bargaining unit. The record does not provide enough information to apply the factors in section 9(b) (5 ILCS 315/9(b) (West Supp. 2007)) to option 8L as a whole. We decline to hold that all of the employees in option 8L belong in the same bargaining unit solely and simply because they are attorneys. Such a holding would be simplistic and artificial and not based on the factors in section 9(b). Unlike the clerical employees in *General Service Employees Union, Local 73*, 3 Pub. Employee Rep. (Ill.) par. 3033, at 248, publicly employed attorneys do not have the same job description, and they are not interchangeable.

■ It appears from the record, however, that the six staff attorneys in the Bureau of Administrative Litigation have the same skills and serve the same functions; that they are functionally integrated; that they are interchangeable and have regular contact with each other; and that they have the same supervisor, hours, and working conditions. See 5 ILCS 315/9(b) (West Supp. 2007). Thus, the record contains evidence to support the Board's finding that a bargaining unit consisting of those employees is an appropriate unit. That finding is not clearly erroneous, considering that section 9(b) forbids us to make fragmentation a predominant factor. We have no reason to conclude, on the record before us, that the unit is "artificial or arbitrary." See *Illinois Fraternal Order of Police Labor Council v. Illinois Local Labor Relations Board*, 319 Ill. App. 3d 729, 743, 745 N.E.2d 647, 659 (2001).

### 2. Unit RC—10, the Preexisting Unit of Attorneys

■ The employer argues that if the staff attorneys are not manage-

rial employees, they should be placed in the preexisting bargaining unit of attorneys, RC—10, represented by AFSCME. In support of that argument, the employer cites *Department of Central Management Services*, 21 Pub. Employee Rep. (Ill.) par. 205, at 755, in which the Board held that a group of attorneys employed by the Department of Revenue were not managerial employees and the Board placed them in the existing unit, VR—10. In that case, however, AFSCME filed a unit-clarification petition seeking to add those employees to VR—10. In the present case, as the Board said, AFSCME "does not seek herein to represent the petitioned-for employees, nor has it [done so] in the [16] years since that unit was formed." 23 Pub. Employee Rep. (Ill.) par. 173, at 743. We agree with the Board that it is "fundamentally at odds with the Act itself to place the petitioned-for employees' right to organize completely under the control of a third party." 23 Pub. Employee Rep. (Ill.) par. 173, at 743.

## III. CONCLUSION

For the foregoing reasons, we affirm the Board's decision.

Affirmed.

MYERSCOUGH and STEIGMANN, JJ., concur.