# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Department of Central Management Services/Pollution Control Board v. Illinois Labor Relations Board, State Panel**, 2013 IL App (4th) 110877

---

| | |
|---|---|
| Appellate Court Caption | THE DEPARTMENT OF CENTRAL MANAGEMENT SERVICES/POLLUTION CONTROL BOARD, Petitioner, v. THE ILLINOIS LABOR RELATIONS BOARD, STATE PANEL; JACALYN J. ZIMMERMAN, MICHAEL HADE, MICHAEL COLI, ALBERT WASHINGTON, and JESSICA KIMBROUGH, the Members of Said Board and Panel in Their Official Capacity Only; JOHN F. BROSNAN, Executive Director of Said Board in His Official Capacity Only; and AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, COUNCIL 31, Respondents. |
| District & No. | Fourth District<br>Docket No. 4-11-0877 |
| Filed | January 11, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Attorney-assistant employees of the Pollution Control Board who provide advice and direction to the members of the Board regarding legal issues related to the Board's functions are managerial employees as a matter of law; therefore, the decision of the Illinois Labor Relations Board, State Panel, that they were not managerial employees and should be included in a proposed bargaining unit was reversed. |
| Decision Under Review | Petition for review of order of Illinois Labor Relations Board, State Panel, No. S-RC-10-196. |
| Judgment | Reversed. |

Counsel on
Appeal

Joseph M. Gagliardo and Lawrence Jay Weiner (argued), Special Assistant Attorneys General, of Chicago, for petitioner Department of Central Management Services.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Eric Truett (argued), Assistant Attorney General, of counsel), for respondent Illinois Labor Relations Board, State Panel.

Gail E. Mrozowski (argued) and Andrew B. Epstein, both of Cornfield & Feldman, of Chicago, for respondent American Federation of State, County, and Municipal Employees.

Panel

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court, with opinion.

Justices Pope and Knecht concurred in the judgment and opinion.

## OPINION

¶ 1    In February 2010, respondent, the American Federation of State, County, and Municipal Employees, Council 31 (AFSCME), filed a majority interest representation petition under the Illinois Public Labor Relations Act (Act) (5 ILCS 315/1 to 27 (West 2010)) with the Illinois Labor Relations Board (Board), seeking to include attorney-assistant employees of the petitioner, the Department of Central Management Services (CMS), in AFSCME's existing RC-10 bargaining unit.

¶ 2    In August 2011, the Board, in a 3 to 2 decision, issued a ruling, rejecting CMS's argument that the positions in question–namely, public service administrators, option 8s (hereinafter, PSA 8s), which is a designation assigned to state employees who, in this case, are employed as attorney-assistants by the Pollution Control Board (PCB)–were managerial under the Act.

¶ 3    CMS appeals, arguing that the Board erred by (1) concluding that the disputed PSA 8s (1) were not managerial under the Act and (2) finding that employees who are exempt from the Illinois Personnel Code under section 4d(1) (20 ILCS 415/4d(1) (West 2010)) should be included in the bargaining unit. Because we agree with CMS that the Board's determination that the disputed PSA 8s were not managerial employees was clearly erroneous, we reverse.

¶ 4                              I. BACKGROUND

¶ 5    In February 2010, AFSCME filed a majority interest representation petition under the Act

with the Board, seeking to include certain CMS employees in AFSCME's existing RC-10 bargaining unit.

¶ 6  In March 2010, CMS filed its initial position statement, in which it asserted that the employees at issue should be excluded from the bargaining unit as (1) managerial and/or confidential employees or (2) exempt as at-will employees under section 4d(1) of the Personnel Code.

¶ 7  The case proceeded to a hearing before an administrative law judge (ALJ) at which the parties entered stipulations as to several employees and sought a determination on the remainder. The parties presented the following background (1) at that September 2010 hearing and (2) through their posthearing briefs.

¶ 8  The employees at issue were employed by the PCB, which is a quasi-judicial and quasi-legislative body. The PCB's quasi-judicial functions involve implementing environmental regulations through enforcement, adjustment, and appeals. The PCB's quasi-legislative functions involve drafting and issuing the state's environmental regulations and governing the actions of the Illinois Environmental Protection Agency.

¶ 9  The PCB is comprised of five full-time members. Each PCB member is permitted to hire at least one assistant and a secretary. Although they are not required to be, the assistants to the PCB members have traditionally been attorneys. Those attorneys assist the PCB by providing advice and direction with respect to legal issues involving the PCB's functions, given that the PCB members have traditionally not been attorneys.

¶ 10  The following four PCB attorney assistants are the PSA 8s at issue: (1) Timothy Fox, (2) Daniel Robertson, (3) Marie Tipsord, and (4) Richard McGill. Each of these attorney-assistants or, as the Board would later describe them, "clerks," works closely with the PCB members to, among other duties, draft and issue administrative adjudicatory decisions.

¶ 11  On this description of employment, the ALJ entered a recommended decision and order, finding that "[n]one of the petitioned-for employees" were confidential or managerial employees under the Act.

¶ 12  In May 2011, CMS filed its exceptions to the ALJ's decision, and AFSCME responded. In August 2011, the majority of the Board entered a written order, adopting the ALJ's rationale and concluding as follows: "The attorney[-]assistants work very closely with the true managers–the PCB members–but the evidence fails to establish that they were themselves managerial employees." Two Board members dissented, opining that they would have concluded that the PCB members' attorney-assistants were managerial employees because they "collaborate one-on-one with their PCB members, not only in authoring decisions, but in arriving at decisions."

¶ 13  This appeal followed.

¶ 14                    II. ANALYSIS

¶ 15  CMS argues that the Board erred by (1) concluding that the disputed PSA 8s (1) were not managerial under the Act and (2) finding that employees who are exempt from the Personnel Code under section 4d(1) (20 ILCS 415/4d(1) (West 2010)) should be included in the

bargaining unit. Because we agree with CMS that the Board's conclusion that the disputed PSA 8s were not managerial employees was clearly erroneous, we reverse and remand.

¶ 16                                          A. The Standards of Review

¶ 17        Initially, we note that the standard of review that we employ when reviewing a Board's findings depends on the nature of the question we are considering. We review questions of fact under the familiar manifest-weight-of-the-evidence standard. *Department of Central Management Services v. Illinois Labor Relations Board, State Panel*, 2011 IL App (4th) 090966, ¶ 127, 959 N.E.2d 114 (hereinafter *Public Service Administrator, Option 2*) (involving a representation petition seeking to add to existing bargaining unit RC-62 disputed employees in public service administrator, option 2 (PSA 2), positions (Department of Revenue, Department of Aging, CMS Internal Auditor Unit, Illinois Department of Natural Resources, Illinois Department of Employment Security, Department of Human Services, Illinois Department of Financial and Professional Regulation, Public Health, State Employee Retirement System, Illinois State Police, Veterans Affairs, Illinois Department of Health and Family Services, Department of Corrections, and other CMS departments)). When, of course, the question is purely one of law, our review is *de novo*. *Public Service Administrator, Option 2*, 2011 IL App (4th) 090966, ¶ 128, 959 N.E.2d 114.

¶ 18        However, sometimes the question cannot be accurately characterized as either one purely of fact or one purely of law because it is a mixed question. In such a circumstance, we employ an intermediate standard of review. We recently outlined this intermediate standard in *Public Service Administrator, Option 2* as follows:

> "A mixed question of fact and law is one that involves the examination of the legal effect of a particular set of facts. [Citation.] Put another way, 'a mixed question is one "in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or *** whether the rule of law as applied to the established facts is or is not violated." ' [Citation.] When reviewing these mixed questions, we give a diminished amount of deference by asking whether the Board's decision is clearly erroneous. [Citation.] In this context, a finding is clearly erroneous if, despite the existence of some evidence to support the finding, the evidence in its entirety leaves the reviewing court with the definite and firm conviction that the finding is a mistake. [Citation.] Again, the finding is that the undisputed facts do or do not satisfy the statutory standard, the meaning of which likewise is undisputed. [Citation.] If there could be two reasonable but opposing views of whether the facts satisfy the statutory standard, the Board cannot have committed clear error by choosing between those views. [Citation.]" *Public Service Administrator, Option 2*, 2011 IL App (4th) 090966, ¶ 129, 959 N.E.2d 114.

¶ 19         B. Employees Excluded From the Statutory Right To Bargain Collectively

¶ 20        Section 6 of the Act outlines the statutory right of state employees to organize and bargain collectively. 5 ILCS 315/6 (West 2010). "[E]mployee[s]" are "individual[s]

employed by a public employer ***[,] excluding *** managerial employees; *** confidential employees; *** and supervisors." 5 ILCS 315/3(n) (West 2010). CMS contends only that the attorney-assistants at issue in this case should be excluded as managerial employees. Accordingly, a discussion only of what constitutes a managerial employee is warranted.

¶ 21                                    1. *Managerial Employees*

¶ 22        We utilize two tests to determine whether an employee is a managerial employee: (1) the traditional test, which considers whether the employee is a managerial employee as a matter of fact, and (2) the alternative test, which considers whether the employee is a managerial employee as a matter of law. *Department of Central Management Services/The Department of Healthcare & Family Services v. Illinois Labor Relations Board*, *State Panel*, 388 Ill. App. 3d 319, 330, 902 N.E.2d 1122, 1130 (2009) (hereinafter *Department of Healthcare & Family Services*) (representation proceeding seeking to add all public service administrators, option 8L, attorneys in the Bureau of Administrative Litigation in the office of the Inspector General within the Department of Healthcare and Family services (six attorneys)).

¶ 23              a. The Traditional Test: Managerial Employees as a Matter of Fact

¶ 24        Managerial employees under the traditional test are those employees who are "engaged predominately in executive and management functions and [are] charged with the responsibility of directing the effectuation of management policies and practices." 5 ILCS 315/3(j) (West 2010). Therefore, managerial-employee status requires two parts: (1) the employee must be "engaged predominately in executive and management functions" and (2) the employee must be "charged with the responsibility of directing the effectuation of [such] management policies and practices." 5 ILCS 315/3(j) (West 2010).

¶ 25        The Act does not define "executive and management" functions but we have noted that these functions amount to, among other things, running a department by assuring that the department operates effectively. *Department of Central Management Services/Illinois Commerce Comm'n v. Illinois Labor Relations Board*, *State Panel*, 406 Ill. App. 3d 766, 774, 943 N.E.2d 1136, 1143 (2010) (hereinafter *Illinois Commerce Comm'n*) (involving certification of union as representative of one ALJ IV and seven ALJ IIIs, all of whom work at the Illinois Commerce Commission). Put another way, managers run the department by, for example, formulating policies and procedures. *Id.*

¶ 26        The second part of the statutory definition of managerial employee relates to how the department is run. This court described this second part of the statutory definition of managerial employee in *Public Service Administrator, Option 2* as follows:

" 'A managerial employee not only has the authority to make policy but also bears the responsibility of making that policy happen.' [Citation.] That is, managerial employees do not merely recommend policies or give advice to those higher up the employment chain, 'they actually direct the governmental enterprise in a hands-on way.' [Citation.] The touchstone of such status is the independent authority to establish and effectuate policy. [Citation.] However, managerial status can also include those who make 'effective recommendations'–that is, those employees who make recommendations that

-5-

are almost always implemented. [Citation.]" *Public Service Administrator, Option 2*, 2011 IL App (4th) 090966, ¶ 135, 959 N.E.2d 114.

¶ 27        b. The Alternative Test: Managerial Employees as a Matter of Law

¶ 28    Managerial employees under the alternative test are those employees who are "generally clothed with all the powers and privileges" of their management supervisor. (Internal quotations marks omitted.) *Department of Healthcare & Family Services*, 388 Ill. App. 3d at 332, 902 N.E.2d at 1132 (quoting *Office of the Cook County State's Attorney v. Illinois Local Labor Relations Board*, 166 Ill. 2d 296, 303, 652 N.E.2d 301, 304 (1995)). Such employees are considered managerial as a matter of law because they have independent authority as assistants to the management supervisor, and they, in effect, act as surrogates. *Department of Healthcare & Family Services*, 388 Ill. App. 3d at 333, 902 N.E.2d at 1132.

¶ 29        2. *Managers as a Matter of Law and Managers as a Matter of Fact*

¶ 30    On December 28, 2010, separate panels of this court issued opinions in cases involving ALJs from (1) the Illinois Human Rights Commission (*Department of Central Management Services/The Illinois Human Rights Comm'n v. Illinois Labor Relations Board, State Panel*, 406 Ill. App. 3d 310, 316, 943 N.E.2d 1150, 1158 (2010) (hereinafter *Illinois Human Rights Comm'n*) (involving a representation petition seeking to add seven PSA, option 8Ls (ALJs), at the Human Rights Commission to an existing bargaining unit, RC-10)) and (2) the Illinois Commerce Commission (*Illinois Commerce Comm'n*, 406 Ill. App. 3d 766, 943 N.E.2d 1136) who were seeking to unionize. In the former case, this court reversed the Board's decision to certify the Human Rights Commission ALJs, concluding that the ALJs were, as a matter of law, managers under the Act. In the latter, this court reversed the Board's decision to certify the Commerce Commission ALJs, remanding the cause for an oral hearing to determine whether, as a matter of fact, the ALJs were managers for purposes of the Act. A brief examination of the facts of these two cases sheds light on the managerial status of the attorney-assistants in this case.

¶ 31        a. The Case Involving the Human Rights Commission ALJs

¶ 32    In the case involving the Human Rights Commission ALJs, this court concluded that because the ALJs were vested with the authority to hear testimony, make findings of fact, and issue recommended orders, those ALJs were managers as a matter of law. *Illinois Human Rights Comm'n*, 406 Ill. App. 3d at 316-17, 943 N.E.2d at 1156-57. Specifically, this court concluded as follows:

"[T]he ALJs preside over hearings and render decisions in cases that involve alleged civil rights violations. They act with discretion and with the purpose of carrying out the policies of the Commission. Their recommended orders become the final decision of the Commission. Although parties in the underlying action may seek review of an ALJ's recommended order, the Commission is highly deferential to the ALJ's findings of fact. *** [T]he ALJs' actions are closely identified with those of the Commission, a unity of

professional interests exists between the two, and the ALJs have the power to act on behalf of the Commission." *Illinois Human Rights Comm'n*, 406 Ill. App. 3d at 316-17, 943 N.E.2d at 1156-57.

¶ 33                      b. The Case Involving the Commerce Commission ALJs

¶ 34      In the case involving the Commerce Commission ALJs, this court explained that it did not conclude that the ALJs were managers as a matter of law because the administrative procedures utilized by the two agencies–the Human Rights Commission and the Commerce Commission–were different. *Illinois Commerce Comm'n*, 406 Ill. App. 3d at 781, 943 N.E.2d at 1149. Specifically, the ALJs at the Commerce Commission, unlike the ALJs at the Human Rights Commission, did not become "surrogate[s]" of the commission members because of the way the Commerce Commission handled the written arguments against the recommendations that the Commerce Commission ALJ issued. *Illinois Commerce Comm'n*, 406 Ill. App. 3d at 782, 943 N.E.2d at 1150. In so concluding, the court remanded the case for further administrative proceedings on the question of whether the ALJs were managerial as a matter of fact. *Illinois Commerce Comm'n*, 406 Ill. App. 3d at 783, 943 N.E.2d at 1150.

¶ 35                      C. The Attorney-Assistants in This Case

¶ 36      In this case, the attorney-assistants work closely with the PCB members, providing advice and direction with respect to legal issues involving the PCB's functions. Each of the attorneys works closely with–and, at times, on behalf of–the PCB members to, among other duties, draft and issue administrative adjudicatory decisions. In other words, the PCB members and the attorney-assistants share a unity of professional interests. In this regard, these attorneys perform strikingly similar functions to that of judicial law clerks. When so viewed, we conclude that the attorneys in this case are more like the ALJs in the Human Rights Commission case than the ALJs in the Commerce Commission case. That is, given their unique duties and independent authority as surrogates to the PCB members, we hold that they are "managerial employees" as a matter of law.

¶ 37      Because we have concluded that the attorney-assistants at issue are managerial employees as a matter of law, we need not address CMS's contention that the Board erred by finding that employees who are exempt from the Personnel Code under section 4d(1) (20 ILCS 415/4d(1) (West 2010)) should be included in the bargaining unit.

¶ 38                      III. CONCLUSION

¶ 39      For the reasons stated, we reverse the Board's determination.

¶ 40      Reversed.