# Illinois Official Reports

## Appellate Court

---

*American Federation of State, County, & Municipal Employees (AFSCME), Council 31 v. State*, 2014 IL App (1st) 130655

---

| | |
|---|---|
| Appellate Court Caption | AMERICAN FEDERATION OF STATE, COUNTY, and MUNICIPAL EMPLOYEES (AFSCME), COUNCIL 31, Petitioner-Appellant, v. STATE OF ILLINOIS, ILLINOIS LABOR RELATIONS BOARD, STATE PANEL, and STATE OF ILLINOIS, DEPARTMENT OF CENTRAL MANAGEMENT SERVICES (ILLINOIS COMMERCE COMMISSION), Respondents-Appellees. |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-0655 |
| Filed | December 31, 2014 |
| Decision Under Review | Petition for review of order of the Illinois Labor Relations Board, State Panel, No. S-RC-09-202. |
| Judgment | Affirmed in part and reversed in part. |
| Counsel on Appeal | Mark S. Stein, of Cornfield & Feldman LLP, of Chicago, for appellant.<br><br>Lisa Madigan, Attorney General, of Chicago (Carolyn E. Shapiro, Solicitor General, and John P. Schmidt, Assistant Attorney General, of counsel), for appellees. |

JUSTICE REYES delivered the judgment of the court, with opinion.
            Justice McBride concurred in the judgment and opinion.
            Justice Gordon dissented, with opinion.

**OPINION**

¶ 1        Following a hearing before an administrative law judge (ALJ) of the Illinois Labor Relations Board (Board), the American Federation of State, County, and Municipal Employees (AFSCME) timely filed a petition for review of the Board's decision pursuant to section 3-113 of the Code of Civil Procedure (735 ILCS 5/3-113 (West 2012)). AFSCME argues on appeal that the Board erred in designating James Weging, Richard Favoriti, and Christine Ericson managerial employees. For the following reasons, we reverse the Board's decision as to Weging and Ericson, and affirm the Board's decision as to Favoriti.

¶ 2                                    BACKGROUND

¶ 3        The Illinois Commerce Commission (ICC or Commission) is a quasi-judicial body that regulates public utility services in the state. 220 ILCS 5/2-101 *et seq.* (West 2012) (Public Utilities Act). The ICC's stated mission is to pursue an appropriate balance between the interest of consumers and existing and emerging service providers to ensure the provision of adequate, efficient, reliable, safe and least-cost public utility services.[1] The Commission attempts to achieve that mission, in part, by overseeing the certification of private entities that wish to provide public utilities, setting the rates utility companies can charge, providing oversight for various safety measures, and investigating and handling complaints against utility companies.

¶ 4        AFSCME is a national public services employees union. In 2012, AFSCME petitioned the Illinois Labor Relations Board to include as part of the existing RC-10 bargaining unit four ICC attorneys: John Feely, James Weging, Richard Favoriti, and Christine Ericson. Following a hearing, the ALJ issued a recommended decision and order, finding all four lawyers should be included in the bargaining unit as nonmanagerial employees. Both the State of Illinois Department of Central Management Services and AFSCME filed exceptions to the recommended decision.

¶ 5                               I. The Board's Decision

¶ 6        A five-member panel of the Board issued a decision on January 28, 2013. The three-member majority agreed with the ALJ regarding the status of John Feely,[2] but found

---

[1]This mission statement was referred to both in the record and on the Commission's website. See Illinois Commerce Commission, http://www.icc.illinois.gov (last visited Nov. 24, 2014).

[2]The parties do not dispute the status of John Feely on appeal.

the remaining three ICC attorneys–James Weging, Richard Favoriti, and Christine Ericson–were managerial employees.

¶ 7                                    A. James Weging

¶ 8      James Weging works in the solicitor section of the ICC. The solicitor section handles appeals when parties challenge ICC decisions, defends suits filed by utilities against the Commission, and initiates actions to enforce ICC orders in court. According to the record, Weging has worked in the same position and performed more or less the same duties since the 1980s.

¶ 9      The Board acknowledged Weging spends the "majority of his time"[3] representing the ICC during judicial review of the Commission's determinations, deeming this function nonmanagerial. Nevertheless, the Board noted Weging "also defends and otherwise represents the ICC in state and federal court outside the context of administrative review, including in original actions to enforce Commission orders." According to the Board, these additional duties "create[ ] more opportunity for an attorney's litigation advice to spill into advice that concerns changing the way the agency operates, or even its policy objectives." The Board found Weging's advice in these instances to be "more in the nature of managerial work," citing two examples where Weging acted as a managerial employee. In the first example, Weging convinced the ICC to pursue a supervisory order in the Illinois Supreme Court, which would have likely had "a broad impact on the ICC and its operations," if granted.[4] In the second example, Weging advised how to revoke a utility's certificate of public necessity and convenience, ultimately establishing guidelines for the particular task. The Board ultimately characterized it as a "close matter," but found "Weging's activities in representing the ICC outside the context of administrative review and in developing litigation strategy so "qualitatively different" as to "render[ ] him a managerial employee."

¶ 10                                   B. Richard Favoriti

¶ 11     Richard Favoriti works in the advisory section of the ICC, which functions as in-house counsel to the Commission.[5] In determining the nature of Favoriti's employment, the Board relied on the ALJ's general description of his duties, stating:

> " '[Favoriti] researches and drafts legislation, analyzes proposed legislation, and advises the ICC on legislative initiatives; he plans and conducts extensive and complex research to determine statutory compliance by applying legal methods and procedures with reference to the legal implications involved; he confers and advises ICC staff on complex issues of statutory interpretation and compliance; he also performs other duties, special projects or research, as required or assigned which are

---

[3]According to the record, Weging spends 70% of his time on such functions.

[4]Weging's motion asked the Illinois Supreme Court to find the Second District Appellate Court had jurisdiction over a particular matter instead of the First District. The Illinois Supreme Court denied the motion.

[5]According to his testimony, Favoriti began in this role approximately three years prior to the December 2011 hearing in this matter.

reasonably within the scope of duties enumerated within his job description. In addition, Favoriti has special expertise in pipeline safety and accordingly handles related matters.' "

The Board additionally examined specific instances of Favoriti's work. In particular, the Board noted Favoriti has drafted legal advice while "serv[ing] as an assistant to the Commission," helped draft amendments to legislation, and drafted orders initiating citation proceedings.[6] Favoriti also on one occasion helped draft a proposed rule concerning "the disclosure of gas pipeline inspections and audit information to the public." The Board "[found] these tasks to be executive and management functions." Further, the Board cited another instance where the ICC asked Favoriti whether it was required to follow an executive order from the Governor implementing a furlough program. After Favoriti advised the Commission it would not be obligated to follow the order, the ICC chose not to implement the program. According to the Board, Favoriti's involvement regarding the executive order indicated his "managerial status because [the ICC's decision] broadly concern[ed] how the agency will be run and concern[ed] the means the agency will use to achieve its mandate." The Board then found that, in sum, "the evidence sufficiently establishe[d] that Favoriti is a managerial employee."

¶ 12                                C. Christine Ericson

¶ 13        Christine Ericson's employment with the ICC primarily relates to the interaction between the Commission and outside entities, namely, federal agencies with the capacity to impose restrictions on the ICC, such as the Federal Energy Regulatory Commission (FERC). Her responsibilities in this role involve both litigation-related tasks and advisory functions. Her primary duties include representing the ICC in matters pending before the FERC and advising the ICC's "Federal Energy Policy" group (FEP). Relying on Ericson's advice, the FEP then counsels the Commission on whether it should intervene in certain FERC actions–for example, "proceedings initiated by consumers against an Illinois utility." If the ICC decides to intervene, Ericson initiates the process by drafting and filing the necessary documents on the Commission's behalf.

¶ 14        Additionally, Ericson's position involves her monitoring the activities of external organizations in the field of utility and energy policy. She participates in work groups of multistate agencies that oversee the interstate electrical grid and reviews their monthly agendas. Using this experience, Ericson then flags issues for the FEP's attention she deems may be of potential interest to the ICC.

¶ 15        Ultimately, the Board found the drafting of documents by Ericson did not constitute managerial duties. The Board, however, found Ericson's "role as an advisor and gatekeeper with respect to those areas in which the ICC chooses to become involved in arenas outside the State and outside its role as regulator *** indicative of managerial status." The Board noted Ericson is responsible for "flagging" which issues pending before outside entities are

---

[6] The ICC institutes citation proceedings against utilities that have failed to comply with Commission orders, the Public Utilities Act, or other safety guidelines. ICC staff first drafts a report identifying the alleged violation. Favoriti then reviews the report and drafts the initiation order to put before the Commission. According to the record, the ICC routinely accepts Favoriti's eventual recommendation to initiate citation proceedings.

important to the ICC from a legal perspective. This means that "[i]f she does *not* flag a matter that *is* important to the ICC or the State of Illinois *** the ICC decision-makers will not be able to act on that important matter." (Emphases in original.) Thus the Board concluded, even though her recommendations may not necessarily be followed all of the time, her gatekeeping role demonstrated a "power and influence on managerial decision-making sufficient to constitute managerial authority."

¶ 16                                    II. The Dissent

¶ 17    Two panel members dissented as to the Board's determination of Weging, Favoriti, and Ericson as managerial employees. The dissent acknowledged "these attorneys play an important role in the ICC's operations," but argued "that role is nevertheless purely advisory and subordinate." The dissent noted "there is nothing in the record to suggest that Weging's, Favoriti's, or Ericson's legal recommendations 'almost always persuade' their superiors," which would imply they possess managerial authority. Instead, the dissent urged, "the predominant function of all four of the positions at issue is to perform the classic role of an attorney."

¶ 18                                     ANALYSIS

¶ 19    The Illinois Public Labor Relations Act (Act) "grant[s] public employees full freedom of association, self-organization, and designation of representatives of their own choosing for the purpose of negotiating wages, hours and other conditions of employment or other mutual aid or protection." 5 ILCS 315/2 (West 2012). The Act excludes managerial employees from the definition of a "public employee," thereby limiting their rights to engage in collective bargaining. 5 ILCS 315/3(n) (West 2012). AFSCME challenges on appeal the Board's decision to classify Weging, Favoriti, and Ericson as managerial employees.

¶ 20    " 'Managerial employee' means an individual who is engaged predominantly in executive and management functions and is charged with the responsibility of directing the effectuation of management policies and practices." 5 ILCS 315/3(j) (West 2012). This definition has yielded a two-part test–referred to as the "traditional test"[7]–to determine an employee's managerial status. *Department of Central Management Services/Pollution Control Board v. Illinois Labor Relations Board, State Panel*, 2013 IL App (4th) 110877, ¶ 24. The traditional test requires the employee be: (1) " 'engaged predominantly in executive and management functions' "; and (2) " 'charged with the responsibility of directing the effectuation of [such] management policies and practices.' " *Id.* (quoting 5 ILCS 315/3(j) (West 2010)). The first part of the test relates to *what* an employee does, *i.e.*, "executive and management functions." See *id.* ¶ 25. Although the Act does not define "executive and management functions," this court has generally interpreted the language to mean duties related to the running of a department, for example, by "formulating policies and procedures." *Id.* The second part of the test relates to *who* is responsible for the running of the department; that is, to be managerial, an employee must not merely have the " 'authority

---

[7]The Board may deem an employee managerial as a "matter of law" or as a "matter of fact." *Department of Central Management Services/Pollution Control Board*, 2013 IL App (4th) 110877, ¶¶ 22-28. The traditional test determines whether an employee is managerial as a matter of fact. *Id.* ¶ 22. Whether the employees in this case are managerial as a matter of law is not at issue on appeal.

- 5 -

to make policy but also bear[ ] the responsibility of making that policy happen.' " (Internal quotation marks omitted.) *Id.* ¶ 26 (quoting *Department of Central Management Services v. Illinois Labor Relations Board, State Panel*, 2011 IL App (4th) 090966, ¶ 135).

¶ 21 Under the Illinois Administrative Review Law, our examination of an agency's decision "shall extend to all questions of law and fact presented by the entire record before the court." 735 ILCS 5/3-110 (West 2012). The standard of review "turns on whether the issue presented is a question of fact, a question of law, or a mixed question of law and fact." *Elementary School District 159 v. Schiller*, 221 Ill. 2d 130, 142 (2006). We reverse an agency's findings of fact only if they are against the manifest weight of the evidence. *Comprehensive Community Solutions, Inc. v. Rockford School District No. 205*, 216 Ill. 2d 455, 471-72 (2005); 735 ILCS 5/3-110 (West 2012) ("The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct."). Conversely, we review an agency's conclusion on a question of law *de novo. Elementary School District 159*, 221 Ill. 2d at 142.

¶ 22 A mixed question of law and fact asks the legal effect of a given set of facts. *Id.* at 143. Thus, upon review, we must determine whether established facts satisfy applicable legal rules. *Id.* We review an agency's conclusion on a mixed question of law and fact for clear error. *Id.* Clear error review "is significantly deferential to an agency's experience in construing and applying the statutes that it administers." *Id.* We will therefore deem an agency's decision to be "clearly erroneous" only where we are " ' "left with the definite and firm conviction that a mistake has been committed." ' " *Comprehensive Community Solutions, Inc.*, 216 Ill. 2d at 472 (quoting *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001), quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

¶ 23 AFSCME does not challenge the factual findings of the Board, but argues: (1) the Board failed to apply what it refers to as the "predominance requirement" or "predominance test" of section 3(j) of the Act; and (2) the Board incorrectly concluded Weging, Favoriti, and Ericson are managerial employees. We review the first contention–which requires us to examine the appropriate statutory standard and determine whether the Board applied that statutory standard–*de novo. Elementary School District 159*, 221 Ill. 2d at 142. We review the second contention–which asks "whether the facts satisfy the statutory standard"–for "clear error." *County of Cook v. Illinois Labor Relations Board–Local Panel*, 351 Ill. App. 3d 379, 385 (2004).

¶ 24                                    I. Proper Legal Standard

¶ 25 As noted above, the first part of the traditional test asks whether an employee is "engaged *predominantly* in executive and management functions." (Emphasis added and internal quotation marks omitted.) *Department of Central Management Services/Pollution Control Board*, 2013 IL App (4th) 110877, ¶ 24; 5 ILCS 315/3(j) (West 2012). Referring to it as the "predominance test" or "predominance requirement," AFSCME argues the Board "inexplicably" failed to first consider whether the employees spent a majority of their time on managerial duties as a necessary prerequisite to their managerial status. According to AFSCME, the lack of a specific referral to the "predominance test" or "predominance requirement" evidences the Board having "forgot the predominance requirement existed

- 6 -

when making its decision." AFSCME therefore asserts we "should, at a minimum, [reverse and remand] to the Board for the application of the proper legal standard."

¶ 26　We first note that no case AFSCME cites specifically refers to the first part of the traditional test as "predominance test" or "predominance requirement." See generally *Department of Central Management Services/Illinois Commerce Comm'n v. Illinois Labor Relations Board, State Panel*, 406 Ill. App. 3d 766 (2010); *County of Cook v. Illinois Labor Relations Board–Local Panel*, 351 Ill. App. 3d 379 (2004). Thus, contrary to AFSCME's assertion, the mere fact the Board "did not mention the predominance requirement" as a term of art in its analysis does not necessarily imply it failed to take the actual requirements of the statute into consideration.

¶ 27　Moreover, AFSCME's contention raises the question whether the strict numerical approach it advocates is necessarily the correct one. In one instance, this court stated that the "first part of the statutory definition of a 'managerial employee' describes the nature of the work to which the individual devotes most of his or her time." *Department of Central Management Services/Illinois Commerce Comm'n v. Illinois Labor Relations Board, State Panel*, 406 Ill. App. 3d 766, 774 (2010). Relying on this language, AFSCME contends employees *must* spend more than half of their time on managerial duties to be "engaged predominantly in executive and management functions." We find such a rule would be inconsistent with the body of law in this area.

¶ 28　In similar cases challenging an employee's status as a supervisor, this court has explicitly stated we do not require mathematical certainty in determining whether employees spend a preponderance of their time on supervisory functions.[8] *Secretary of State v. Illinois Labor Relations Board, State Panel*, 2012 IL App (4th) 111075, ¶ 110; *Department of Central Management Services v. Illinois State Labor Relations Board*, 278 Ill. App. 3d 79, 86 (1996). In articulating the reason for such a rule, this court first noted, " '[p]reponderance' can mean superiority in numbers or superiority in importance." *Department of Central Management Services*, 278 Ill. App. 3d at 86 (citing Webster's Third New International Dictionary 1791 (1986)). The court then added:

> "If an employee spends 51% of employment time doing administrative functions and 49% in supervisory functions, the most significant part of the job may not be the administrative matters because of the importance of employee relations. Whether a person is a 'supervisor' should be defined by the significance of what that person does for the employer, regardless of the time spent on particular types of functions." *Id.*

¶ 29　We see no reason why the approach should be any different in cases determining whether an employee is managerial. First, we note "predominant"–like the meaning of "preponderance"–also means superiority in importance or numbers. See Merriam-Webster's Collegiate Dictionary 978 (11th ed. 2004) (defining "predominant" as "having superior

---

[8]The Act defines "supervisor," in part, as "[a]n employee *** who has authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, direct, reward, or discipline employees, to adjust their grievances, or to effectively recommend any of those actions" and "devote[s] a preponderance of their employment time to exercising that authority." 5 ILCS 315/3(r)(1) (West 2012). Supervisors, like managerial employees, are excluded from collective bargaining under the Act. 5 ILCS 315/3(n) (West 2012).

strength, influence, or authority" or "being most frequent or common"). Likewise, we do not believe whether a person is a "managerial employee" should be defined solely by the time spent on managerial duties, but also by the significance of those duties. Our case law in this area reflects this principle.

¶ 30    In *Salaried Employees of North America (SENA) v. Illinois Local Labor Relations Board*, 202 Ill. App. 3d 1013 (1990), this court reviewed a decision of the board finding all of the attorneys in the City of Chicago's law department to be managerial employees. *Id.* at 1014. In its analysis, the court noted "the key inquiry is whether the duties and responsibilities of the employees in question are such that the employees should not be placed in a position requiring them to divide their loyalty between the employer and the collective bargaining unit." *Id.* at 1021. The *SENA* court then examined the "diffused" structure of the law department, concluding it was "impossible to determine how the Law Department could efficiently operate if it was to be divided into union/nonunion attorneys." *Id.* at 1022. The *SENA* court next shifted its focus to the duties of the attorneys and found the attorneys "have the authority to recommend changes in the manner in which the city operates." *Id.* at 1022-23. Ultimately, the *SENA* court affirmed the board's decision, notably doing so without ever discussing the amount of time each employee spent on managerial duties versus nonmanagerial duties. *Id.* at 1023.

¶ 31    While the *SENA* court acknowledged the facts of the case were unique, the decision still illustrates that a purely time-based approach in determining an employee's predominant function can be difficult to reconcile with the purpose of the managerial exclusion. The line that separates when an employee is acting in a managerial capacity and a nonmanagerial capacity is often opaque; "there is no hard and fast rule regarding what duties and responsibilities qualify" as managerial. *SENA*, 202 Ill. App. 3d at 1020. Accordingly, we reject AFSCME's argument that time spent on managerial tasks is determinative of managerial status and conclude that the significance of the duties must also be considered. See, *e.g.*, *Board of Regents of the Regency Universities System v. Illinois Educational Labor Relations Board*, 166 Ill. App. 3d 730, 743 (1988) (finding employees to be managerial despite spending at most half of their time on managerial tasks).

¶ 32    In this case, the Board outlined the various responsibilities of each employee, identifying those which took up the "majority of [the employee's] time" or qualified as the employee's "main task." The Board then explained which duties it found to be managerial, citing specific examples of an employee's managerial influence. It weighed the significance of that influence before ultimately concluding whether the respective employee was managerial. We do not believe the Board's methodology indicates it simply ignored consideration of the time each employee spent on managerial functions. Accordingly, the appropriate question on appeal is not whether the Board applied the proper legal standard, but whether the Board erred in its ultimate conclusions in applying that legal standard. With this in mind, we review the Board's decision regarding each employee in turn.

¶ 33                                    II. James Weging

¶ 34    AFSCME notes the Board found Weging spends the "majority of his time" in the role of a traditional attorney, representing the ICC during judicial review of the Commission's determinations. This fact, according to AFSCME, should have thereby precluded the Board

from finding Weging is a managerial employee because the Board also found this duty was nonmanagerial. The Board noted:

> "In that capacity, an attorney's role is to defend the agency's decision, not to alter or help derive the agency's rationale. In this role, [Weging] does not meet the first element of managerial status because he does 'nothing amount[ing] to the running of an agency or department *** . [Weging] does not meet the second element because he does not 'oversee[ ] or coordinate[ ] policy implementation through development of means and methods of achieving policy objectives, determine[ ] the extent which the objectives will be achieved, and is [not] powered with a substantial amount of discretion to determine how policies will be effected.' "

AFSCME's argument rests on the assumption that spending more than half of one's time on nonmanagerial tasks necessarily forecloses the possibility of being a managerial employee; our previous discussion defeats this assumption. See *supra* ¶¶ 25-32. Nevertheless, we still find the Board erred in designating Weging as a managerial employee because he does not meet the first prong of the traditional test.

¶ 35 While the fact that Weging spends most of his time on nonmanagerial litigation-related responsibilities is not automatically fatal to his case, we note his additional duties are not necessarily managerial either. As the Board acknowledged, Weging's remaining duties are mostly advisory. Generally, "merely recommend[ing] policies or giv[ing] advice" does not amount to managerial work; managerial employees "actually direct the governmental enterprise in a hands-on way." *Department of Central Management Services*, 406 Ill. App. 3d at 775. Nonetheless, "managerial status can also include2 those who make 'effective recommendations'–that is, those employees who make recommendations that are *almost always* implemented." (Emphasis added.) *Department of Central Management Services*, 2011 IL App (4th) 090966, ¶ 135. The Board found Weging had the "opportunity" to act as a managerial employee in this advisory capacity, citing two specific instances of effective recommendations. The first involved Weging's advice in pursuing a supervisory order. The other instance involved Weging advising how to revoke a utility's certificate of public necessity and convenience. The ICC followed Weging's recommendations on both occasions.

¶ 36 Two examples during the course of more than 20 years, however, hardly supports the notion that Weging's recommendations are "almost always implemented" by his superiors. While it appears Weging's intermittent advisory role allows him to occasionally impact ICC policy, that role is neither frequent enough nor significant enough to support a finding of managerial status. See *Department of Central Management Services/Department of Healthcare & Family Services v. Illinois Labor Relations Board, State Panel*, 388 Ill. App. 3d 319, 332 (2009). We do not believe Weging is "predominantly" engaged in managerial duties in either sense of the word and therefore reverse the Board as to his status.

¶ 37 ### III. Richard Favoriti

¶ 38 AFSCME argues the Board erred in finding Favoriti performs any managerial duties. In one sentence without any citation to authority, AFSCME argues that Favoriti's role in initiating citation proceedings does not constitute a managerial function because "it is clear from the ALJ's own discussion that [Favoriti] is but one step in a conveyor process that cannot possibly be equated to running an agency." We reject this contention for several

reasons. First, cursory arguments that do not to cite relevant authority violate Illinois Supreme Court Rule 341 (eff. Feb. 6, 2013), resulting in forfeiture of the issue. *Kic v. Bianucci*, 2011 IL App (1st) 100622, ¶ 23. Second, we review the final decision of the Board, not the ALJ. *Wilson v. Department of Professional Regulation*, 317 Ill. App. 3d 57, 64-65 (2000). Notwithstanding this fact, AFSCME still mischaracterizes the ALJ's decision; the ALJ found Favoriti's role in citation proceedings is managerial despite participation from multiple parties because Favoriti is responsible for "spur[ring] the Commission's formal action."

¶ 39 AFSCME additionally challenges the Board's finding that the advice Favoriti gave regarding the executive order is "indicative of managerial status" as an effective recommendation.[9] According to AFSCME, Favoriti merely tells the ICC "what the law requires" and the Commission still decides how it will act based on that information. To put it another way, because the Commission asked Favoriti whether it *could* ignore the executive order as opposed to whether it *should*, Favoriti's advice does not amount to an effective recommendation. The lone case AFSCME cites in support of its argument does not discuss effective recommendations and is likewise not helpful in guiding our decision here. See *Department of Central Management Services/Department of Healthcare & Family Services*, 388 Ill. App. 3d at 332. Regardless, even assuming AFSCME is correct on this point, the record still supports the Board finding Favoriti as managerial.

¶ 40 In determining his status, the Board collectively relied on several examples of Favoriti making effective recommendations. In addition to the example involving the executive order, the Board cited another specific instance of Favoriti's participation in the rule-making process. Most importantly, however, the Board also found Favoriti makes effective recommendations when he participates in the initiation of citation proceedings. Favoriti's participation in this manner is frequent and, according to the record, his recommendations are accepted "almost 98 percent of the time." Thus, even though the Board believed Favoriti's role in reviewing the Governor's executive order was "indicative of managerial status" because it reflected his proximity to the "most fundamental" of the ICC's policy decisions, the instance is not necessary to the ultimate conclusion Favoriti performs managerial functions. To reverse, we must be " ' "left with the definite and firm conviction that a mistake has been committed." ' " *Comprehensive Community Solutions, Inc.*, 216 Ill. 2d at 472 (quoting *AFM Messenger Service, Inc.*, 198 Ill. 2d at 395, quoting *United States Gypsum Co.*, 333 U.S. at 395). Given Favoriti's significant role in initiating citation proceedings, we cannot say the Board committed clear error. We thus affirm the Board's decision as to Favoriti.

¶ 41            IV. Christine Ericson

¶ 42 With regard to Ericson, AFSCME contends the Board erred in finding her managerial because her role in flagging matters of importance to the ICC is not a managerial function. In its decision, the Board acknowledged that many of Ericson's duties–namely, her drafting and litigation-related duties–were not managerial. It further recognized Ericson's recommendations were only followed "on some occasions," thereby eliminating the

---

[9]Although the Board did not specifically refer to Favoriti's role in this regard as an "effective recommendation," its discussion indicates that is how it treated the advice.

possibility Ericson could be considered managerial based on "effective recommendations." The Board thus based its conclusion as to Ericson's status solely on her responsibility as a "gatekeeper," flagging legal matters she believes may be important to the ICC. Accordingly, Ericson's status inevitably hinges on whether "flagging" issues is a managerial function. We conclude that it is not.

¶ 43    Respondents' argument mirrors that of the Board, contending Ericson "effectively decid[es whether] the ICC will not act on various issues," because if she does not flag a matter the ICC will not be able to take action on it. Neither party cites to any authority directly on point and we are unaware of any in existence dealing with the issue of a "gatekeeper." Nevertheless, we hesitate to conclude Ericson's control over Commission policy in this respect is significant enough to warrant her status as managerial. For Ericson to be managerial, she must either "actually direct the governmental enterprise in a hands-on way" or make effective recommendations. (Internal quotation marks omitted.) *Department of Central Management Services*, 2011 IL App (4th) 090966, ¶ 135. Ericson does neither. According to respondents, Ericson affects ICC policy in her role as a "gatekeeper" through omission, that is by not bringing a matter to the ICC's attention in which it might otherwise be interested. In this sense, Ericson's influence on ICC policy is rather limited. She lacks any sort of the direct involvement typically required of managerial employees. Nor does she even recommend a particular course of action. Ericson merely filters which issues may or may not be important. Accordingly, we find her influence to be tenuous at best. Moreover, as respondents' argument implies, such influence can only result from Ericson inadequately performing her duties, either by actively or negligently failing to flag an issue that should otherwise have been flagged. For these reasons, we find Ericson's "gatekeeper" function nonmanagerial and reverse the Board's decision as to her status.

¶ 44                                    CONCLUSION
¶ 45    For the foregoing reasons, we affirm the Board's decision as to Richard Favoriti and reverse the Board's decision as to James Weging and Christine Ericson.

¶ 46    Affirmed in part and reversed in part.

¶ 47    JUSTICE GORDON, dissenting.
¶ 48    I must respectfully dissent, as I disagree with the majority and would affirm the Board's decision. A litigation attorney is in a unique position when representing a governmental unit. In considering whether an attorney is a managerial employee, this court has found that "the key inquiry is whether the duties and responsibilities of the employees in question are such that the employees should not be placed in a position requiring them to divide their loyalty between the employer and the collective bargaining unit." *Salaried Employees of North America (SENA) v. Illinois Local Labor Relations Board*, 202 Ill. App. 3d 1013, 1021 (1990).
¶ 49    By classifying the attorneys as nonmanagerial, we could be placing them in that divided loyalty category. In *SENA*, this court reviewed the decision of the Board finding all of the attorneys in the City of Chicago's law department to be managerial employees and affirmed that decision. *SENA*, 202 Ill. App. 3d at 1014-15. As we found in *SENA*, the attorneys "have the authority to recommend changes in the manner in which the city operates." *SENA*, 202

Ill. App. 3d at 1022-23. In the instant case, all of the attorneys were litigators who have even more authority to recommend changes in the manner in which the agency does business because of the effect that the litigation process has on the way the agency performs their business. The majority has not cited any authority that would classify a litigation attorney as a nonmanagerial employee, and I would follow the reasoning in *SENA*. In the evidence in the instant case, there are many examples where all four attorneys provided recommendations that changed agency policy and the way the agency was doing business.